UNITED STATES of America, Plaintiff-Appellee,

v.

William Rensler NOLAN, Defendant-Appellant.

No. 169–69.

United States Court of Appeals Tenth Circuit.

Aug. 29, 1969.

Thomas J. Burns, Littleton, Colo., for appellant.

William Rensler Nolan, pro se.

Bernard V. Borst, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief) for appellee.

Before PHILLIPS, LEWIS and HICKEY, Circuit Judges.

PHILLIPS, Circuit Judge.

Nolan was charged by indictment with unlawfully transporting in interstate commerce from Long Beach, California, to Pratt, Kansas, on or about March 9, 1968, a stolen motor vehicle, to wit, a 1963 Buick, VIN 1J2519939, the property of Ralph V. Travis, knowing the same to have been stolen.

On a jury trial, a verdict of guilty was returned. Nolan was sentenced to imprisonment for five years and has appealed.

The evidence and other matters in the record established these facts:

The vehicle described in the indictment [1] was owned by Travis and his wife, Bessie L. Travis. They resided at 2718 East 1st Street, Long Beach, California. It bore Vehicle Identification Number 1J2519939 and a California license plate, Number KIT 442.

At approximately 4:30 p. m. on March 8, 1968, Travis drove the stolen vehicle from work to his home and into his garage. He took the ignition key from the stolen vehicle, locked the garage, and went into his home. At about 6:30 the next morning he returned to the garage, found it had been broken into, and that the stolen vehicle was gone. When the ignition key of the stolen vehicle was moved to a position which stopped the motor, and removed, the motor could not be normally started again without the ignition key being inserted and moved to a starting position. At the trial, Travis testified that the last time he saw the stolen vehicle prior to the theft, the ignition lock was not damaged and the trunk lock was not punched out. Travis reported the matter to the Long Beach Police Department, which started an investigation.

On March 11, 1968, at about 4 p. m., Nolan, driving a Buick automobile [2] with

---

1. Hereinafter referred to as the stolen vehicle, except as hereafter noted.

2. Until facts are developed definitely establishing that the Buick was the stolen vehicle, it will be referred to sometimes as the Buick.

590

a California license plate, and his wife, Gale Nolan, registered as guests at the Casa Loma Motel in Pratt, Kansas, under the names Mr. and Mrs. William Nolan, and gave their address as 2718 East 1st Street, Long Beach, California, which it will be observed was the address of Mr. and Mrs. Travis. The Nolans were assigned to occupy Room 2. The names and address were written on the registration card by Nolan.

At about 9 a. m. on March 12, 1968, a Kansas highway patrolman, Charles Stucky, observed a Buick automobile with a California license plate, KIT 442, parked in front of Room 2 at the motel. His attention was attracted to the Buick because the trunk lock thereto had been punched out. That caused Stucky to radio his division headquarters for a check through NCIC (National Criminal Information Center) on the California license displayed on the Buick. The NCIC responded that a vehicle bearing California license plate KIT 442 had been reported stolen at Long Beach, California. On receipt of that information, Stucky left the motel and contacted Paul Garst, Chief of Police of Pratt, Kansas, by radio and requested assistance.

Stucky, Garst, and a police officer went to the motel. They observed Nolan come out of Room 2 of the motel and enter the Buick. Stucky and the police officer then went to the Buick and placed Nolan under arrest. Nolan was given the warning required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Nolan made no statement, incriminatory, exculpatory, or otherwise, then or thereafter to any of the officers. At the time of the arrest, Stucky observed that the ignition lock on the Buick had been damaged by tampering with it with some sort of instrument; that the keyhole had been considerably enlarged, and that there were scratches on or about the area of the keyhole.

At the time of the arrest of Nolan, Stucky searched him and found nothing.

On the morning of March 12, 1968, Stucky also arrested Mrs. Nolan at the motel, and she voluntarily gave him Nolan's billfold, which contained registration papers for a Buick automobile for the years 1966, 1967, and 1968. Each registration paper set forth the license number as KIT 442, the identification number as 1J2519939, the body type number as SED 4119, and the names and address of the owners as Travis, Ralph V. or Bessie L., 2713 East 1st Street, Long Beach, California. Each registration card also stated the year for which it was issued.

At the time the officers received the registration papers they had not yet ascertained the identification number on the Buick parked in front of Room 2 of the motel. The only identifying number they had was the license plate number. Not until they later obtained the identification number of the Buick parked in front of Room 2, could they be certain it was the stolen vehicle, although they had considerable evidence that it was. Moreover, under California law, the registration papers must be kept in the vehicle at all times, and that was the normal place to have found them.

At the trial, Nolan introduced the 1966, 1967, and 1968 certificates of registration.

No search of the Buick was made at the time of Nolan's arrest.

After the arrest of the Nolans on March 12, 1968, and after an entirely adequate showing of probable cause had been made, the County Judge of Pratt County, Kansas, issued a search warrant, which in part read:

"Having evidence under oath before me from which I find there is probable cause to believe that an offense against the laws of the state of California has been committed and that certain items, to-wit:

The Registration papers and other documents of a 1963 Buick Sedan bearing 1968 California license number KIT 442; ID# 1J2519939;

which items are fruits or evidence of such offense, are located in a certain 1963 Buick Sedan, bearing 1968

California license KIT 442, colored tan, or in Room 2, Casa Loma Motel, Pratt, Kansas.

"You are therefore commanded forthwith to search the place, thing or means of conveyance hereinbefore specified for such items, holding them to be dealt with according to law * * *."

The warrant was served on Nolan at 4:05 p. m. on March 12, 1968, and the searches of the Buick and the motel room were made on the same day, between 4:15 and 5:15 p. m. No documents were found in the Buick or in the motel room. The officers observed that the identification number on the Buick was 1J25-19939. They also took photographs from outside the Buick of the punched out trunk lock, and a photograph of the enlarged ignition keyhole on the dashboard, which Stucky had seen when he arrested Nolan. They also found under the front seat of the Buick a pair of scissors. They examined the ignition lock and observed that the keyhole had been enlarged and that the tumblers had been knocked out. There were scratches on the blades of the scissors about one inch in length and the scissors appeared to fit the enlarged ignition keyhole. No ignition keys were found in the Buick or in the motel room.

When Nolan was turned over by the state officers to federal officers, William B. Thompson, a member of the Bar of the United States District Court for the District of Kansas, was immediately appointed to represent him and act as his counsel. On August 26, 1968, Thompson filed a motion to withdraw as counsel for Nolan, because Nolan had advised him he desired to represent himself and did not desire Thompson to represent him. The motion was heard on September 3, 1968. After the judge had advised Nolan of the desirability of having counsel to represent him, at the insistence of Nolan, he permitted Thompson to partially withdraw, but requested Thompson to keep himself available for consultation with Nolan during the trial and to assist Nolan in every possible

way. The record of the trial is replete with conferences between Nolan and Thompson. In fact, Thompson assisted Nolan in the presentation of some of the evidence, during the argument to the jury, and on a motion to suppress evidence, made during the trial.

When the scissors were identified and offered in evidence at the trial by the Government, Nolan objected on the ground that the search which led to the discovery of the scissors was illegal. No motion to suppress had theretofore been made by Nolan, but the court recessed the trial and held a full evidentiary hearing on a written motion, which the court permitted to be filed, and on which Nolan relied. The principal grounds of the motion were that the officers already had the registration papers; that no search for documents was necessary; and that the scissors were not named in the warrant as one of the items for which the search was to be made. The search warrant named the identification number as one of the items for which the search was to be made, and it also specified "other documents." There might have been in the Buick a certificate of ownership or some other evidence of ownership of the Buick, which would have been another document. There was in existence a certificate of ownership of the Buick, issued by the State of California in 1966, which gave the identification number as 1J-2519939, the body type as Sedan 4119, named "Travis, Ralph V. or Bessie L." as the owners, and set forth their address as 2718 East 1st Street, Long Beach, California, in the possession of Travis. At the trial, it was identified by him and introduced in evidence by the United States.

The punched out trunk lock was plainly visible from the outside of the Buick and no search was necessary to make a photograph of it.

The enlarged ignition keyhole was observed by Stucky when he arrested Nolan. It was not first discovered during the search. The photograph thereof was of an instrumentality by which the crime

was committed, that is, the making possible of actuating the starter and running the automobile without the ignition key.

During the search, the officers obtained the identification number of the Buick, which was 1J2519939, and it was then that it was definitely established that the Buick was the stolen vehicle and that the registration papers obtained from Mrs. Nolan were for the Buick.

At the hearing on the motion to suppress, the pertinent evidence above recited, relating to the search of Nolan at the time of his arrest and relative to the execution of such search warrant, was introduced, and the court held both searches were valid and overruled the motion to suppress.

On or about March 28, 1968, while Nolan was in the custody of the Sheriff of Pratt County, Kansas, he escaped from confinement in the Pratt County Jail through a hole made in the north wall of the jail. He was reapprehended later at Liberal, Kansas, and returned to the custody of the Sheriff of Pratt County.

At the trial, Nolan appeared as a witness in his own behalf and testified that he and Mrs. Nolan were in Los Angeles, California for two to three weeks prior to March 9, 1968; that they failed to obtain employment in Los Angeles, and decided to return to their home in Hackettstown, New Jersey; that he previously owned an automobile, but it was damaged by fire and he sold it to a police officer; that he was looking through a section of the Los Angeles Times and noticed ads stating "travel to east coast to deliver cars for people"; that he called the respective numbers given in two of the ads and received a response from one; that the next morning, at the request of the woman who had responded, he met her at a gas station at an address she had given him; that the woman wanted an automobile transported to New York; that she gave here name as Mrs. Bessie Travis; that she stated she was planning on moving to New York; that he told her he wanted to return with his wife to New Jersey; that the woman said the car was at the service station to be serviced, oiled and gassed; that she would pay one-half of the travel expenses and tolls; that the woman asked for references as to where his family lived in New Jersey and he gave her the required information; that she explained to him she was in the process of having an electric trunk put on the automobile, and that there was a hole in "the back of the trunk" and if he wanted to get into the trunk he could put his finger through such hole and open the trunk; that in about an hour and one-half later he left with the automobile, went to his apartment, picked up his wife, put their clothing and effects in the car, and started toward New Jersey; that when they reached Pratt, Kansas, they stopped at a motel for the night; and that the next morning he was arrested.

Until Nolan testified, he had made no exculpatory statement to the federal or state officers or agents.

In his closing argument, counsel for the United States in substance stated that if Nolan's exculpatory statements, to which he had testified, were true, the normal thing for him to have done would have been to make such exculpatory statements to the officers when they arrested him, and that his failure so to do cast much doubt on the truth of his exculpatory statements.[3]

3. In his closing argument, counsel for the United States in part stated:

"* * * if this defendant were the innocent person he claims to be, if he had this tremendous reason, this being hired to transport this car, and were acting as an innocent person, as you and I would if we had been hired to transport a car, he wouldn't have refused to talk to the officer who came there to the motel and said, 'What is it with this car?' He wouldn't have refused to talk to the FBI agent the same day, who came and said, 'What about this car?' If it had been you and I, we would have said, 'Look, I was just hired on the 9th and I answered an ad in the paper, and you can go and check the paper, and go and check,

Neither Thompson nor Nolan objected to such argument by counsel for the United States at the trial, nor did they move for a mistrial. Nolan made his objection to the argument for the first time in his motion for a new trial, which was denied.

We agree with the decision of the trial court that the search of Nolan's person at the time of his arrest, and of the Buick and the motel room under the search warrant were valid.

■ The search of Nolan was incident to his arrest and nothing incriminating was found on his person. Nothing found on his person was introduced in evidence by the United States at the trial.

The punched out trunk lock of the Buick was clearly visible to the officers from outside the Buick, without any search of the Buick.

■ While the number of the license plate on the Buick corresponded with the license number on the registration papers in Nolan's billfold, voluntarily turned over to the officers by Mrs. Nolan when she was arrested, the only way the officers could positively identify the Buick as the stolen vehicle was to ascertain the identification number on the Buick and discover that it was the same as the identification number on the registration papers, which, under California law, should have been kept in the Buick. Hence, there might have been registration papers in the Buick, and a search therefor was justified. The search warrant expressly authorized the ascertainment of the identification number in the Buick. It also authorized a search for "other documents" in the Buick. There could have been other identifying documents in the Buick, which would have established it was the

stolen vehicle, such as, for example, a certificate of ownership. We hold the search of the Buick was made in good faith and was lawful.

■■ The photograph of the punched out trunk lock involved no search of the Buick, as we stated above. The photograph of the enlarged ignition keyhole was of an instrumentality used to commit the crime, that is, a change in the ignition lock mechanism, so it could be put in a position whereby the starter could be actuated and the motor caused to run without an ignition key. The officers no doubt could have removed and held as evidence the enlarged keyhole and the punched out trunk lock, but that was impracticable and the desirable course was to have photographs made that accurately depicted them in their changed condition.

■■ The scissors were also an instrumentality by which the crime was committed, that is, an enlargement of the ignition keyhole. Objects not named in a search warrant, discovered in a lawful search under the warrant, if such objects are instrumentalities and means by which the crime was committed, may be seized.

■ The instruction given by the court with respect to possession of recently stolen property was not substantially different from instructions with respect thereto, approved by this court,[4] and does not merit specific consideration.

We have fully considered the other alleged errors, and with the exception of one which we shall presently consider, they are so clearly without merit as not to justify specific consideration.

This brings us to the only serious error urged for reversal, the statement of

---

look up this person and this agency.' That is what you would have done if you were innocent. If you were guilty, you wouldn't have told a thing, would you, and you would wait because you knew your story wouldn't hold water, and you would wait to bring it in at the last minute in the hopes that no one could prove it was true or false."

4. Fitts v. United States, 10 Cir., 284 F. 2d 108, 110, 111; Grandsinger v. United States, 10 Cir., 332 F.2d 80, 82; Seefeldt v. United States, 10 Cir., 183 F. 2d 713, 715; Fitts v. United States, 10 Cir., 328 F.2d 844, 846, cert. denied 379 U.S. 851, 85 S.Ct. 96, 13 L.Ed.2d 55.

counsel for the United States in his closing argument, hereinbefore set out.

It was held in Miranda v. Arizona, 384 U.S. 436, at page 444, 86 S.Ct. 1602, 16 L.Ed.2d 694, that an accused, when taken into custody, has the constitutional right to remain silent and refrain from making either "exculpatory or inculpatory" statements, and, at page 460, 86 S.Ct. at page 1620, that "the privilege is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'"

■ In a trial in a federal court, it is reversible error for counsel for the United States or the trial judge to comment on the failure of the defendant to take the stand and testify in his own behalf.[5] The defendant has the constitutional right to remain silent.

Such comment, if permitted, would impose a penalty on the exercise of the constitutional privilege. It would greatly impair that privilege and the exercise thereof would be costly to the defendant.[6]

■ We see no difference in principle in the exercise by the defendant of his constitutional right not to testify and his constitutional right to remain silent and refrain from making either an inculpatory or exculpatory statement to the officers when taken into custody for a federal offense. In either case, the comment would greatly impair such privilege and penalize the exercise thereof. Apposite is the language of the Supreme Court in Griffin v. California, 380 U.S. 609, at page 614, 85 S.Ct. 1229, at page 1233: "It is a penalty imposed * * * for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly."

We think the error committed was so plain, fundamental, and serious that we should consider it, although timely objection was not made thereto in the trial court.[7]

Reversed and remanded, with instructions to grant Nolan a new trial.

5. Griffin v. California, 380 U.S. 609, 611, 612, 85 S.Ct. 1229, 14 L.Ed.2d 106; Cloud v. United States, 8 Cir., 361 F.2d 627, 630.

6. Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229.

7. Silber v. United States, 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798; Wright v. United States, 10 Cir., 301 F. 2d 412, 414; Gay v. United States, 10 Cir., 322 F.2d 208, 209.