**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Kenneth JULIAN, Defendant-Appellant.**

**James K. JULIAN, Petitioner-Appellant,**

v.

**UNITED STATES MARSHAL, Respondent-Appellee.**

**Nos. 71–1237, 718–70.**

United States Court of Appeals, Tenth Circuit.

Nov. 11, 1971.

---

Douglas K. Dusenbury, Wichita, Kan., for appellant.

Mark B. Thompson, III, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., with him on the brief), for appellee.

Before LEWIS, Chief Judge, HILL and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

These are related cases consolidated for presentation in this court.

No. 71–1237 is a direct appeal following appellant's conviction for a violation of the Dyer Act, 18 U.S.C. § 2312, after a jury trial in the District Court for the District of New Mexico. Six assignments of error attack the judgment of conviction, claim being made that (a) the verdict was not supported by substantial evidence, (b) appellant was denied a prompt arraignment, (c) appellant was denied the right of compulsory process, (d) evidence obtained through unlawful search and seizure was admitted at trial, (e) reference during trial that appellant had been found by the court to be competent to stand trial was a prejudicial violation

of 18 U.S.C. § 4244,[1] and (f) that the testimony of witnesses and comments by the prosecution concerning appellant's silence on arrest and subsequent interviews were clear error.

On June 16, 1970, a Mr. Brokaw of Los Altos, California, was assaulted in his back yard by a man who bound him, took his car keys and wallet, and drove away in his automobile, a 1968 Buick. Brokaw reported the assault and theft and consequently the stolen car was listed with the National Crime Information Center. On July 1, 1970 the car was spotted by New Mexico state police on the parking lot of a motel in Hobbs, New Mexico and put under surveillance. After appellant was observed carrying clothes and other property from his motel room to the car he was arrested by the New Mexico authorities on a charge of receiving stolen property. He was frisked on the spot, his pockets emptied, and the contents returned to him after it was determined he was unarmed. At the police station appellant refused to identify himself and he was again searched. His wallet contained credit cards and identification issued to Mr. Brokaw. The car was also searched by state officers at the parking lot site before being impounded and without a warrant. A Master Charge slip showing Brokaw's name was found in the console and a unique cane found in the trunk. Pictures of the car and the articles in the car were received in evidence at trial. Brokaw, at trial, identified the car and the cane as being his and also identified appellant as the person who assaulted him and stole the subject car. He testified that the charge slip was an unauthorized use of his Master Charge.

Appellant was held in Hobbs for the state offense until July 14, at which time the state charge was dismissed and he was transferred to the custody of the United States Marshal on a charge of escape from a federal prison. On July 20, a complaint was issued on the Dyer Act charge and a grand jury issued an indictment on August 3. The appellant was arraigned on August 7, and the trial was set for September 14. On August 28, however, the appellant was declared incompetent by the court and was committed to the Federal Medical Center at Springfield, Missouri, the trial being postponed indefinitely. On December 18, acting on the basis of a report of the Medical Center staff, the court found the appellant competent. The trial began January 11, 1971. Proof of the substantive elements of the Dyer Act offense was overwhelming and appellant's defense was limited to a claim of incompetency at the time of commission of the offense.

Appellant's claims pertaining to a tardy arraignment, denial of compulsory process, and insufficient evidence are each without merit.

■ The record shows complete regularity in all federal procedures. Following his arrest for federal offenses, both escape from Leavenworth on July 14, and the instant offense on July 20, he was promptly taken before a magistrate upon issuance of the separate complaints. He now points only to the lapse of time between his original state arrest on July 1, and his ultimate arraignment on the Dyer Act indictment on August 7. No claim is made that his state arrest was unlawful or a sham or that the state custody between July 1, and July 14, was pursuant to an unlawful working arrangement between state and federal authorities.

■ The contention concerning denial of compulsory process is projected indirectly through the denial of a motion for continuance made on the morning of trial. On that morning the appellant handed to his trial counsel a list of witnesses that he wished to have subpoenaed. His counsel moved for a continuance in order to discuss the list with the

---

1. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

appellant to determine if any of the witnesses would be helpful in his defense. The appellant claimed that he had given a similar list to his first appointed counsel and assumed that his former counsel would have given the list to his trial counsel. A hearing on this matter was held at which the appellant's trial counsel expressed the opinion that the additional witnesses would not be helpful to the appellant's case. The trial judge denied the motion for continuance. Such a motion is addressed to the sound discretion of the court and a refusal to grant the motion will not be disturbed on appeal absent a clear abuse of discretion. United States v. Ledbetter, 10 Cir., 432 F.2d 1223; United States v. Eagleston, 10 Cir., 417 F.2d 11. No such abuse appears here.

As we have earlier indicated, Brokaw's testimony coupled with appellant's possession of the car in New Mexico is sufficient to establish the substantive elements of the crime, and negatives any claim made to the contrary. So, too, the contention that the warrantless search of the Brokaw car at the site was unlawful and thus invaded appellant's constitutional rights must be rejected.

■ At the time of appellant's arrest he was in the company of several traveling companions. This circumstance clearly points to the potential of the subject car being moved or evidence pertinent to proof of appellant's crime being removed from the car. Under the guidelines established in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, the state officers, in view of the totality of the existing circumstances, had probable cause to believe that a search of the car might well firmly establish both the identity of the car through registration material and appellant's possession of the car both within and outside the State of New Mexico. The evidence found and admitted at trial did, in fact, probe the latter element of the state offense.

In support of the defense of mental incompetency at the time of the commission of the subject offense, appellant presented both his own testimony and that of experts. During the course of cross-examination by the United States the following occurred:

Q. When you were—the only mental hospital you've ever been sent to, is the Springfield Medical Center for the observation and treatment of medical Federal prisoners, is that correct?

A. No, this is not correct.

Q. Oh, you've been to another one?

A. Not the statement you've made is not correct.

Q. Well, have you been to any other mental institution, other than Springfield?

A. The statement you made was for observation. I was not sent there for observation, I was sent there as mentally incompetent.

Q. All right, you were adjudged to be competent by Springfield, were you not?

A. No, I was judged by this Court to be competent, not Springfield.

Q. Well, you were found by the doctors at Springfield to be competent?

A. I was staffed (sic) by the staff of psychiatrists as being competent, yes.

Q. And then you were returned here?

A. And then I was returned here.

■ It is apparent from the record that the reference to a court adjudication of competency was made by appellant himself, was not pressed by the prosecution but was avoided, passed without objection and was never again referred to. We conclude that the incident does not constitute clear error or a prejudicial violation of 18 U.S.C. § 4244, *supra*.

The record reflects, in accord with appellant's final claim to error in the trial proceedings, that several references were made during trial to the fact of appellant's silence at time of arrest and during subsequent interviews with police officers. Such silence was also the subject

of argumentative comment to the jury. In reliance on this court's decisions in United States v. Arnold, 425 F.2d 204, and United States v. Nolan, 416 F.2d 588, appellant asserts this aspect of the trial to constitute clear error. In the cited cases we held it clear error for the prosecution to argue that an accused's pre-trial silence was an indication of guilt and stated the right to remain silent at the time of arrest was as fundamental as the right not to testify. However, we agree with the government that the impact of that rule is not here applicable, but disagree with the reasons advanced by the United States in support of this result by brief and during oral argument. The United States contends that the subject evidence was not presented in support of guilt of the substantive elements of the offense but as evidence of appellant's competence, inferring that a competent person will not talk when arrested and, presumably, that a stupid or mentally incompetent one would or might. We reject the supportive reasoning as a completely false premise in fact or law. Such reasoning was not advanced in argument to the jury and consequently we do not consider our decisions in *Arnold* and *Nolan* to be here determinative.

One of the defense witnesses, a qualified psychiatrist, testified that appellant was a mentally ill person who had an overwhelming compulsion to be institutionalized. The premises, in part, for such a conclusion were laid in appellant's repeated incarcerations for crime and the fact that appellant had left such an obvious trail between California and New Mexico that arrest would seem inevitable. On cross-examination the witness testified:

Q. All right. And it's a fact that he most probably knew the nature and consequences of his acts, did he not?

In other words, if he were caught, he would probably be prosecuted, is that not correct?

A. Well, yes, and I think he was trying to be caught.

Q. Well then, Doctor—

A. Because that makes his—

Q. —would he refuse to even identify himself by name, to the FBI, or any of the police officers, and had to be identified through fingerprints, if he wanted to be caught?

A. Well, that fits his picture. He's —ah—his life is full of controversy, and conflict. It's foolish not to give your name when you're caught and handcuffed. He does a lot of foolish things.

We hold that this cross-examination was proper. The weight to be given to the expert's conclusion of compulsive conduct is certainly aided by inquiry into the question of why a person who desires to be arrested would, upon arrest, refuse to identify himself and, under the circumstances of this case, we find no error in allowing the inquiry.

The judgment is affirmed in No. 71–1237.

No. 718–70 is an appeal from an order of the District Court for the District of New Mexico denying, without an evidentiary hearing, appellant's claims for relief contained in a petition for habeas corpus. The petition was filed August 7, 1970, and denied by the court on August 28, 1970, and the action dismissed. In main part, the allegations of the petition purported to present the same issues that we have now considered on direct appeal, or, as noted by the trial court, were but broad conclusions unsupported by any allegation of fact. We consider that order of dismissal to have been proper, but in view of appellant's incompetence at such time and because conclusionary allegations may be amended to become cognizable, that such dismissal should have been without prejudice. This case is thus remanded to the trial court with instructions to enter judgment of dismissal without prejudice and is otherwise

Affirmed.