Teresa Louise **BUCHANAN**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–73–399.

Court of Criminal Appeals of Oklahoma.

June 12, 1974.

As Amended June 17, 1974.

Rehearing Denied June 24, 1974.

Ronald H. Mook, Tulsa, and Stipe, Gossett, Stipe & Harper, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., John Wilkinson, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Teresa Louise Buchanan, hereinafter referred to as defendant, was charged, tried and convicted of the crime of Robbery With Firearms in the District Court of Tulsa County, Oklahoma. She was sentenced to serve a term of fifteen (15) years in the state penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

Briefly stated, the facts are as follows: The State's first witness was Don Edward Archambo who stated that on the evening of February 23, 1973, he was employed at a Git-N-Go Store located on East 21st Street in Tulsa. At approximately 10:40 p. m. a woman came in and asked for some cigarettes. When he looked back around, the woman had a gun pointed at him and threatened to shoot him if he did not give her all the money. Approximately $95.00 was taken.

The witness further testified that an Officer Roberts came to his home on the 26th of February and showed him 8 to 10 pictures of women, out of which he identified the defendant. Upon cross-examination, the witness stated that he told the officer he was "pretty sure" that one was the picture of the woman who robbed him. The police officer then stated that it was the picture he wanted selected. The witness further identified the robber as a girl, 5 foot 4 inches to 5 foot 6 inches tall, and with brown hair. He further stated that she had no black eye at the time of the robbery. The State then rested.

The defendant then called Violet L. Patterson, the defendant's mother, who testified that on the day in question her daughter had been hit in the eye while working on a trailer and that the eye had been swollen. She further stated that she and her husband were with the defendant and some of her friends on the 23rd after 9:35 p. m. and that the defendant did not leave their presence.

Officer Clarence Smith then testified that he investigated the robbery and that the victim Archambo had described the suspect as being approximately 5 foot 1 inch tall.

The defendant then called J. C. Patterson, the defendant's father, who corroborated his wife's testimony concerning the alibi. He further testified that his daughter had a very swollen eye that was turning black.

The defendant then took the stand in her own behalf. She testified that she never left her parents' home after 6:15 p. m. on the 23rd. From 9:15 p. m. until she went to bed at 1:15 a. m. on the 24th she and some friends were packing a trailer which she subsequently took to California. She further testified that on the morning of the 23rd she had injured her eye while working on the trailer and, as a result, her eye had been swollen and discolored. On cross-examination she admitted a prior conviction for carrying a loaded firearm.

The defense then called Ray Voils who stated that he was with the Pattersons on the evening in question as they belonged to the same square dance club. He stated that he definitely remembered the Pattersons leaving the dance around 9:00 or 9:30 p. m. on the 23rd. The defendant then rested.

On rebuttal, the State called Officer Don Bell who stated that Mrs. Patterson had previously told him that she returned home from the square dance at 11:00 p. m. on the evening of the 23rd.

In her brief, the defendant urges that the picture identification procedure was conducted in a manner so unnecessarily suggestive as to induce an irreparable, tainted and mistaken in-court identification of the defendant. The record reflects that the issue was properly raised at trial and that the trial court held a hearing concerning same outside of the presence of the jury and subsequently overruled the defense motion to suppress the in-court identification. We do not find from the record as a whole that the trial court

abused its discretion in overruling said defense motion.

The defendant further raises numerous acts of the Assistant District Attorney which she contends were highly prejudicial to her rights to a fair and impartial trial. The record reflects that the following cross-examination of the defendant took place:

"Q: Arraigned for what?

A: For this, for this armed robbery; and yes, sir, I went there and I went to my arraignment and I came back from San Diego.

Q: Did you call the police on the 27th or 28th, you or your parents or your attorney?

A: What for, I have—

MR. MOOK: I object to that question, it is not relevant, it is not competent to prove or disprove any elements in this crime. If he wants to ask me that question I can answer it.

THE COURT: It would have to be in the presence of this person only.

MR. HOPPER: Yes, I am asking her.

Q: (By Mr. Hopper) Did you call the police and tell them you couldn't have done it?

MR. MOOK: I would like a ruling on my objection.

THE COURT: Overruled, allow an exception.

MR. MOOK: Exception.

A: That is what I had my attorney for.

Q: (By Mr. Hopper) Did you ever call the police?

A: No, sir.

Q: Or your parents in your presence and say it couldn't have been my daughter, it couldn't have been me.

MR. MOOK: I object to what they might have said. He is trying to testify. It is an improperly formed question.

A: I was already charged with it.

THE COURT: Overruled.

Q: (By Mr. Hopper) Charged with a crime you didn't commit?

A: Yes, sir."

The record further reflects that on closing argument the following comments were made by the prosecuting attorney:

"Well, I want you to think about this. If you are going to consider that this woman is innocent I want you to remember the testimony of this witness, this defendant and the testimony of her parents, Mr. and Mrs. J. C. Patterson. There is no doubt that they are fine people and I have no quarrel or argument with them. But it's their daughter that is on trial and I submit to you, ladies and gentlemen, what one of you, if your son or daughter was on trial for this serious felony crime of armed robbery, would lay back from the 23rd day of February until the 26th day of June and keep it a secret that this is not the person who committed it.

MR. MOOK: I want to object to this argument twisting, and distorting the alibi and I will cite Gorley versus U.S., 365 Federal 2d 884. The prosecutor is well aware there was no laying back and hiding any alibi in this case coming from the witnesses. He is commenting completely outside the evidence.

MR. HOPPER: I am commenting on what they testified.

THE COURT: Permit it and allow an exception.

MR. MOOK: I will move you admonish the jury in order to preserve this question. I don't think it could be removed.

THE COURT: Denied, exception allowed.

MR. HOPPER: What one of you would go from February until June? You would be clawing on the doors of the district attorney's office, at Jack Purdie's office, the chief of police. 'Look, sir, you have got an innocent person charged with a crime. I can prove it, I was with her.'

Or, would you hide her out in a motel and wait until the day of trial.

MR. MOOK: Same objection. Ask for the same admonishment, the same basis for it.

THE COURT: Denied, exception allowed.

MR. HOPPER: Hide her out in a motel and wait until the day of trial to come in and tell your story about how innocent she is. She has to be innocent because I was with her all evening, I was with her at the time the robbery was committed. Is that what you would do? Is that what reasonable people would do? And while we are thinking about that, think of the defendant's testimony. What was the first thing she did when she got on the stand? She gave all of you a big smile and she let you hear her western country accent. Now, keep in mind this is a person who contends that she is innocent of the crime she is charged with."

■ It is the opinion of this Court that the cross-examination of the witness concerning her failure and the failure of her parents to come forward and make a statement prior to trial and the closing argument stressing same constitutes fundamental error on behalf of the prosecuting attorney. The defendant had a clear constitutional right to remain silent from the moment she became a suspect. The prosecuting attorney's comment upon the defendant's failure to make a statement or to raise her defense of an alibi prior to trial constitutes a clear, fundamental, and reversible error on the State's part. See United States v. Arnold, 425 F.2d 204 (10th Circuit, 1970); United States v. Nolan, 416 F.2d 588 (10th Circuit, 1969); and Deats v. Rodriguez, 477 F.2d 1023 (10th Circuit, 1973).

Therefore, for the reasons set out above it is the opinion of this Court that the judgment and sentence appealed from should be and the same is hereby reversed and remanded for new trial on the charge of Robbery With Firearms.

BRETT, J., concurs.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting):

I must respectfully dissent to the decision in the instant case based on the decisions of United States v. Nolan, supra; United States v. Arnold, supra; and Deats v. Rodriguez, supra. While we are bound by the decisions of the United States Supreme Court construing those provisions of the Constitution, made obligatory upon the States by the 14th Amendment, neither the Supreme Court of the United States, nor any Federal Court, has superintending power over the State Courts.

I am in complete accord with the Dissenting Opinion of Circuit Judge Breitenstein in Johnson v. Patterson, 475 F.2d 1066 (1973), where the defendant, in a state prosecution, testified in his own behalf, as did the defendant in the instant case. In his well reasoned Dissent, Judge Breitenstein stated:

"Believing that the majority opinion throws yet another roadblock to impede the search for truth in the administration of criminal justice, I respectfully dissent. The majority permits a defendant, who by testifying in his own behalf has cast aside the cloak of immunity, to put that coat back on when the cross-examination becomes discomfiting.

"This is a state prisoner habeas corpus in which the district court granted relief. Defendant, who was charged with rape, testified in his own behalf and said that the intercourse was consensual. On cross-examination, and without objection, he said that before trial he had mentioned the consent defense only to his lawyer. In closing argument, and again without objection, the prosecutor referred to the pre-trial silence.

"The majority does not discuss what to me is the crux of the controversy. We

have here a conflict between the Fifth Amendment privilege against self-incrimination and the principle that a witness shall testify truthfully. By emphasizing the Fifth Amendment right and glossing over the policy which demands truth of a witness and which regards adversary proceedings as a search for the truth, the majority loses sight of the balance which must be maintained. The effect of the majority decision is to suppress a fact which reasonably bears on credibility and, hence, on truth. As said in Tate v. United States, 109 U.S.App. D.C. 13, 283 F.2d 377, 381, 'the theory that judicial suppression of truth has a beneficial effect on the administration of justice is unproved and perhaps unprovable.'

"The thrust of the majority opinion is that under the Fifth Amendment a defendant has the right to remain silent. I agree. The difficulty here is that the defendant took the stand and thereby waived his constitutional right. Under the majority opinion there can be a partial waiver of a constitutional right, a premise which I decline to accept.

"The Supreme Court has said, and we have said, that by taking the stand a defendant subjects himself to cross-examination on matters reasonably related to the subject matter of his direct examination. McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711; Sinclair v. Turner, 10 Cir., 447 F.2d 1158, 1165, cert. denied 405 U.S. 1048, 92 S.Ct. 1329, 31 L.Ed.2d 590. The majority says nothing about this principle but seemingly relies on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, and Tenth Circuit decisions to be mentioned later. The applicability of Miranda is destroyed by Harris v. New York, 401 U.S. 222, 226, 91 S.Ct. 643, 28 L.Ed.2d 1, which says that Miranda is not a license for the use of perjury in defense. Grif-

fin is not pertinent because in that case the defendant did not take the stand.

"The case at bar differs from Harris in that there the impeachment was by prior inconsistent statements. Here we have silence. The majority opinion ignores Raffel v. United States, 271 U.S. 494, 497, 46 S.Ct. 566, 568, 70 L.Ed. 1054, which permitted cross-examination on pretrial silence and said that 'having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.' Raffel was reexamined, but not overruled, in Grunewald v. United States, 353 U.S. 391, 418, 424, 77 S.Ct. 963, 1 L.Ed.2d 931. In holding that in the circumstances of Grunewald, cross-examination over objection on a pre-trial claim of the Fifth Amendment was improper, the Court did not base its decision on any constitutional right but instead said that it was acting under its supervisory power over the administration of criminal justice. 353 U.S. at 424, 77 S.Ct. 963.

"In the case before us there was no contemporaneous objection either to the cross-examination or to the remark in argument. I say that, in the circumstances presented, to permit the defendant to rearm himself with the constitutional shield is to convert a criminal trial from a search for the truth into a game to be won by the cleverest player. Cf. Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503.

"The action of the Supreme Court in placing its Grunewald decision on its supervisory power is significant. Federal courts have no supervisory power over the administration of criminal justice in state courts. Federal habeas corpus relief is available to a state prisoner when he has been deprived of a right secured to him by the United States Constitution. I do not know what federal constitutional right has been denied the defendant. The only possible reliance can be on the immunity from self-incrimination and

that must be based on the acceptance of the idea of a partial waiver. I know of no decision of the Supreme Court which permits a partial waiver of a constitutional right. The approval of such an idea will open a veritable Pandora's box.

"The majority mentions three Tenth Circuit decisions. The first is United States v. Nolan, 10 Cir., 416 F.2d 588, 593–594, cert. denied 396 U.S. 912, 90 S. Ct. 227, 24 L.Ed.2d 187. The facts in Nolan are analogous to those in the case at bar except that Nolan was a federal prosecution and here we have a state prosecution. So far as Nolan is concerned it is enough to say that, for the reasons stated in this dissent, I would consign the case to oblivion. The majority quotes from United States v. Arnold, 10 Cir., 425 F.2d 204, 205–206, to the effect that the court will not weigh comparative prejudice. Be that as it may, Arnold is not in point because there the defendant did not take the stand. The exculpatory evidence was introduced through others. United States v. Julian, 10 Cir., 450 F.2d 575, 578–579, permitted cross-examination on silence. The majority says that Julian is inapposite to the instant case because the comment there related to the competence of the defendant. Competence is a mental state; so also is credibility. I am unable to understand why, if testimony as to silence is admissible on competence, it is not also admissible on credibility.

"My position is that when a defendant testifies he may be impeached like any other witness. The use of pre-trial silence for impeachment depends on whether, in the circumstances presented, there is such inconsistency between silence and testimony as to reasonably permit the use of silence for credibility impeachment. In the case at bar the trial court did not exercise the discretion which it has in this area because there was no contemporaneous objection. I believe that the cross-examination was proper for impeachment purposes because common sense teaches that on arrest for forcible rape an accused will claim consent if such be the fact.

"Beyond question, a person has the right to remain silent when arrested, and when accused of a crime. That silence may not be used against him to establish the commission of a crime. The difficulty here is that the defendant did not maintain the silence. Instead, he took the stand in his own defense. When he did so, he subjected himself to pertinent cross-examination. The situation was of his making, not the making of the prosecution. The admission of pre-trial silence was not per se inculpatory.

"In considering the case at bar the Colorado Supreme Court recognized the competition between the protection against self-incrimination and the mandate that a witness shall testify truthfully and held that there was no reversible error. Johnson v. People, 172 Colo. 406, 473 P. 2d 974, 977. Nothing in the federal Constitution requires a contrary holding in this habeas proceeding.

"I would reverse and remand the case with directions to dismiss the habeas petition."

It is significant to me that Judge Breitenstein's dissenting opinion was cited with approval by Judge Barrett in Deats v. Rodriguez, supra.

It is my belief that should the United States Supreme Court wish to extend the rule enunciated in Grunewald v. United States, supra, as violating the Fifth Amendment of the Constitution of the United States instead of imposing it under its superintending power over federal courts, it should do so in clear and unmistakable language and make that ruling obligatory upon the States.

I would encourage the Attorney General of the State of Oklahoma to appeal to the United States Supreme Court for a clear and definitive ruling on the issue here presented.