**Henry Leroy O'BRIEN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–15.**

Court of Criminal Appeals of Oklahoma.

Aug. 27, 1975.

E. Terril Corley, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellant, Henry Leroy O'Brien, hereinafter referred to as defendant, was charged in the District Court of Tulsa County in cases numbered CRF–74–573 and CRF–74–574 by separate informations with Murder in the Second Degree arising out of the violent deaths of Donald Dewayne Anderson and John Worthington, respectively, on or about the 1st day of March, 1974, in Tulsa. The cases were consolidated for trial by agreement, tried before a jury and the defendant was convicted of Manslaughter in the First Degree and punishment assessed at fifty (50) years in the state penitentiary in each case. From judgments and sentences in conformance with the jury verdicts the defendant has perfected his timely appeal.

For reasons hereinafter apparent, we will dispense with a detailed discussion of the facts. Briefly stated, the fact situation is as follows: The defendant, operating through a nonprofit corporation known as the Ecumenical Movement, and John Worthington as owner of a building lease and equipment, ran a bingo parlor in Tulsa. On or about the 1st day of March, 1974, a controversy arose between the parties and

the defendant closed out the bank account and had the municipal bingo license amended. That night an employee, the co-defendant Oscar Smith, drove the defendant to Worthington's apartment in Tulsa. On the way the defendant asked Smith to stop at a convenience store where defendant purchased an ice pick, apparently without the knowledge of Smith. Upon arrival at the apartment, the defendant went in alone and Smith remained in the car. An altercation arose in the apartment and Worthington was shot to death and one Donald Anderson was killed after being stabbed numerous times with an ice pick. The defendant returned to the car and told Smith that "they had pulled a gun on him" and that "there were two guys up stairs who were hurt." They then left and defendant returned to California the next day where he was arrested. Co-defendant Smith remained in Oklahoma were he also was arrested, both being charged jointly with the murders of Worthington and Anderson.

During the trial, the defendant took the stand in his own behalf and testified that prior to the altercation Worthington had prepared a new contract and had told the defendant if he didn't sign "He was going to take care of me like he took care of some other people in this town." Defendant further testified that Worthington explained that he had taken care of earlier situations by bombing people. The defendant further testified that he went to the apartment to terminate the business relationship and was apprehensive about going. He, therefore, purchased the ice pick and hid it up his sleeve. When he entered the apartment he found Worthington and Anderson. After defendant told Worthington that their business relationship had ended and that if there was any trouble he would tell the police that Worthington was wanted in California and had been dealing in narcotics, Worthington looked dazed and pulled a gun. The defendant got possession of the gun and Worthington was shot numerous times. Anderson and the defendant then began to struggle and the defendant, thinking Anderson was reaching for a gun on the dresser, stabbed him with the ice pick until he went limp. The defendant was exhausted and frightened when he returned to the waiting car, and shortly returned to California. He further testified that he never intended to harm anyone, that he was apprehensive when he went to the apartment and that he had acted in self-defense. Other defense witnesses testified concerning the defendant's reputation as a nonviolent person. This was corroborated by the testimony of expert medical witnesses.

■ Defendant's first assignment of error which we consider urges that the Assistant District Attorney committed reversible error when he asked the defendant on cross-examination why he did not tell the District Attorney's office that his co-defendant was innocent. We agree. The Assistant District Attorney cross-examined the defendant as follows:

"Q. When was the first time you found out that Oscar was charged with murder?

"A. When they came to get me for the, for the extradition, I don't know if it was the first time but I can remember the man making the statement that they had Oscar; and my recollection that might be the first time, I am not sure, I might have heard it before that.

"Q. You might have heard it before that?

"A. I am sure I did.

"Q. Well, yes, when you did, did you go to any authorities and say, 'You have got an innocent man there in Tulsa'?

"MR. CORLEY: Object to it. Move for a mistrial.

"THE COURT: Denied.

"A. After I got here in the Tulsa County jail I had talked it over with my attorney and asked him if there was any way that we could get, explain this to the district attorney and tell him that Oscar was not involved in this situation

in any way, shape or form, and Mr. Corley told me that if he went—or I think the assistant district attorney, Mr. Robertson, had a closed mind and wouldn't listen to anything we said.

"Q. (By Mr. Hopper) Had a closed mind and wouldn't listen to anything that you said. That is what Mr. Corley told you?

"A. That is what he felt about him, but he would go and make an attempt.

"Q. You know how to write, don't you?

"MR. CORLEY: I will object to this. Again move for a mistrial.

"THE COURT: Overruled.

"Q. (By Mr. Hopper) Did you ever write Mr. Fallis a letter?

"MR. CORLEY: Excuse me. I will object again. Move for a mistrial, and ask for a ruling on my motion.

"THE COURT: Denied.

"Q. (By Mr. Hopper) Did you ever write a letter and say 'Mr. Smith could not have done anything', did you?

"A. I didn't do that.

"Q. Any particular reason why? He is your friend.

"A. It never came to my mind at that time.

"Q. Never came to your mind. No, sir. You were thinking about old Henry O'Brien, weren't you?

"A. I felt that Oscar should never have suffered this."

We find that this type of inquiry constitutes fundamental error for the same reasons set forth in *Buchanan v. State,* Okl. Cr., 523 P.2d 1134 and *Miles v. State,* Okl. Cr., 525 P.2d 1249. The defendant had a clear constitutional right to remain silent from the moment he became a suspect. The Assistant District Attorney's comment upon the defendant's failure to make a statement concerning the innocence of his co-defendant constitutes a clear, fundamental and reversible error on the State's part.

See also, *Deats v. Rodriguez,* 477 F.2d 1023 (10th Circuit, 1973).

It is interesting to note this Court's opinion in *Buchanan, supra,* an appeal from the District Court of Tulsa County, was handed down and filed in the case June 12, 1974, and on that date copies of the opinion were mailed to the proper court authorities and District Attorney in Tulsa, twelve (12) days before the trial of the instant case began. Yet, the holding in *Buchanan, supra,* on the right of the defendant to remain silent following his arrest and not be subjected to cross-examination for exercising that constitutional right was completely disregarded.

■ The defendant's third assignment of error urges that the conduct of the Assistant District Attorney was prejudicial and denied defendant a fair and impartial trial. Again, we find the defendant's proposition has merit. One of the episodes complained of occurred during the cross-examination of defense witness Dixie Malone as follows:

"Q. (By Mr. Hopper) And you are trying to tell the ladies and gentlemen of this jury, ma'am, that you were not, that Henry was not away from his apartment to avoid detection and you were going to try to get his personal belongings out to flee the area to avoid being arrested, is that what you are trying to tell us?

"A. No, I didn't want him to go home to his apartment before he got counsel from somebody and got some help.

"Q. You are saying you weren't—

"A. I was afraid of him getting arrested, yes, wouldn't you be afraid if you had been in his situation?

"Q. If I had killed and murdered two people I probably wouldn't want to be arrested.

"MR. CORLEY: I will object to the district attorney's testimony unless he is sworn. Move for a mistrial.

"THE COURT: Do not ask the counsel questions. He has not been sworn.

**582**

"MR. CORLEY: May I have a ruling.

"THE COURT: Yes, I sustain.

"MR. CORLEY: On the motion for mistrial.

"THE COURT: I sustained your objection and instructed the witness not to ask counsel questions.

"MR. CORLEY: I also asked for a motion for mistrial.

"THE COURT: Denied."

For the Assistant District Attorney to answer the witness' question as follows:

"If I had killed and murdered two people I probably wouldn't want to be arrested."

constitutes an unreasonable attempt by a prosecutor to inflame the passions or prejudices of the jury.

The defendant next complains of a remark made by the prosecutor during closing argument as follows:

"He didn't have it in his hand when he got in the car, he didn't have the handle in his hand, and you know *he is an experienced man in violation of the law, he testified to that.*" (Emphasis Added)

It is the general rule in this jurisdiction that the only purpose for which prior convictions of a defendant are admissible is to attack the defendant's credibility. However, in the instant case, the prosecutor attempts in his closing argument to convince the jury that the defendant's admitted prior convictions were evidence of guilt. To do so constitutes error. See *Barham v. State*, Okl.Cr., 514 P.2d 417.

In conclusion we observe that defendant was entitled to a fair and impartial trial which was denied him for the reasons set out above. Therefore, the judgment and sentence appealed from should be and the same is hereby *reversed* and *remanded for new trial.*

BRETT, P. J., concurs.

BUSSEY, J., specially concurs.

BUSSEY, Judge (specially concurring):

Although I continue to disagree with the decisions of the Tenth Circuit Court of Appeals, and filed dissents in *Buchanan* and *Miles, supra*, I concur with the opinion of my colleague Judge Bliss, that this case must be reversed and remanded. It would be futile, indeed, to disagree with the majority opinions of this Court based on the decisions of the Tenth Circuit, when inevitably any ruling of this Court contrary to said decisions could successfully be attacked in the United States Court of Appeals, Tenth Circuit.

In concurring, I wish to observe that the United States Supreme Court has *never* held that the cross-examination complained of in *Buchanan, Miles* and cross-examination similar to that in the instant case, is violative of a defendant's Fifth Amendment privilege.