Robert Lee WILLIS a/k/a James Davis, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–977.

Court of Criminal Appeals of Oklahoma.

May 18, 1977.

John T. Elliott, John M. Stuart, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Janet Cox, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Robert Lee Willis a/k/a James Davis, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court, Oklahoma County, Case Number CRF–76–1140 of the crime of Burglary in the Second Degree. Punishment was assessed at a term of seven (7) years under the direction and control of the Department of Corrections of the State of Oklahoma, in accordance with the verdict the defendant has perfected his timely appeal.

Briefly stated the evidence presented at trial is as follows: Lyman Orr, the manager of an OTASCO store located in Del City, testified that he secured the premises on the evening of March 22, 1976, and left the store at approximately 7:00 p. m. At approximately 12:45 a. m. the next morning he received a telephone call informing him that the store had been burglarized. He then notified the assistant manager who went immediately to the premises. When the witness arrived at the store the next morning he observed broken glass lying on the floor and found that fifteen hand guns usually displayed in a security case were missing. He then identified State's Exhibits 1 through 13 as thirteen of the fifteen missing hand guns. No other merchandise had been taken.

Del City Police Officer Jerry Hughes then testified that in the early morning hours of March 23, 1976, he received a radio call from Officer Ingram to proceed to the OTASCO store to assist as a back-up unit. While en route Hughes was asked to investigate the possibility of a burglary in the vicinity of the store. When he arrived he found that an overhead door at OTASCO had a glass pane partially broken out and that the hole was large enough for a small person to pass through. He also discovered that the door between the main building and the service department had the glass broken. A subsequent inventory of the store conducted by the assistant manager revealed the firearms missing.

Officer Jack Ingram then testified that at approximately 12:35 a. m. he was dispatched on a prowler call and while en route he observed a vehicle coming from the shopping center with a headlight out and one person in the car. He then proceeded to investigate the prowler call and after returning to routine patrol he again observed the same vehicle with two persons in it near the OTASCO store. At that time Ingram stopped the vehicle on an improper equipment violation. When he and his partner approached the vehicle he observed the defendant passenger with a tire tool in his hand. He advised the defendant to exit the car at which time he dropped the tire tool and burlap sack into the back seat of the vehicle. Ingram then testified that he observed a gun protruding from the burlap sack and upon examination of the sack found thirteen hand guns, the guns admitted into evidence.

Officer John Beal then testified that after the arrest he confiscated the defendant's shoes and transmitted them to a crime lab where it was determined that the glass embedded in the shoes was similar to the wire mesh glass which had been broken at the OTASCO store. The State then rested.

The defendant then took the stand to testify on his own behalf stating that on the evening in question he and his nephew had

been to a bowling alley located near the OTASCO store. Approximately 11:30 p. m. they proceeded to the vehicle located in the shopping center parking lot and were subsequently stopped by the police officer. He denied burglarizing the OTASCO store and said that he had never seen the guns in question. He further denied having the tire tool in his hand as testified to by Ingram. On cross-examination the defendant stated that he had a prior felony conviction for second degree murder in Missouri. The defense then rested.

Upon rebuttal Officer Beal testified that he had a conversation with the defendant after his arrest and the defendant advised that he was an escapee from the state penitentiary in Missouri. He further told the officer that he was willing to take the "rap" if they would let his nephew go without filing charges. The defendant then took the stand to deny that he ever offered to take the "rap."

■ The defendant's first assignment of error contends that the trial court improperly overruled the defendant's motion to suppress for the reason that the traffic arrest was made as a mere subterfuge to search a suspicious vehicle. In support of his contention the defendant cites *Fields v. State*, Okl.Cr., 463 P.2d 1000.

However, in *Fields*, supra, the arresting officer testified that he recognized the accused, knew his reputation as a "police character" and followed the vehicle for eleven blocks before stopping him since he had no license tag light. Based on the officer's testimony and other evidence presented in the case revealing that the officers searched the vehicle because they were "suspicious," this Court held that the traffic arrest was a mere subterfuge to search the vehicle and that the evidence found was inadmissible.

However, in the instant case Officer Ingram related that he first observed the vehicle with a defective headlight while in the process of investigating a prowler report and that he did not stop the vehicle for that reason. After completing the prowler call he again observed the vehicle and immediately stopped it because of the defective headlight. As he was approaching the vehicle he noticed the defendant passenger with a tire tool. It is only reasonable for the officer to require the passenger to exit the vehicle for his own safety. At that time the officer observed the defendant throw a burlap sack in the back seat causing a hand gun to come into plain view.

There is nothing in the record to reflect that the vehicle was initially stopped as a mere subterfuge to search suspicious characters. Ingram was back on routine patrol and evidently found no circumstances during the prowler call to indicate that there had been a burglary. There being no subterfuge, the defendant's first assignment of error fails.

■ The defendant's second assignment of error contends that the trial court committed reversible error in allowing the prosecuting attorney to elicit testimony from a rebuttal witness concerning the defendant's post-arrest silence. The testimony complained of was that of Officer Beal during his rebuttal testimony which reads as follows:

A I had two conversations with him. One that night of the arrest and one the next day.

Q As to the one the night of the arrest, in the early morning hours of the 23rd of March, 1976, what time was the first one?

A That was probably about 2 or 3 o'clock in the morning.

Q Will you describe what the circumstances were and the conversation?

A I advised Mr. Willis of his Constitutional rights from the *Miranda* Warning.

Q How did you inform him of his rights?

A I read them off of the card given to us by the District Attorney's office.

Q Do you have that card with you?

A Not with me, no. I have one similar to it.

Q Do you recall of your own recollection what you did inform him along that line?

A I have another card that says the same thing. I do not have the same card with me.

Q Do you know of your own knowledge if the card that you have with you today has the same wording as the other card does?

A Yes, it does.

Q All right, sir. Will you get the card you have with you today?

A Yes, sir.

Q Okay. Will you read the card?

A "You have the right to remain silent, anything you say can and will be used against you in a court of law; you have the right to talk to a lawyer and have him present while you are being questioned. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish one." Then I asked him "Do you understand each of these rights that I have explained to you?" and his reply was "Yes."

"Having these rights in mind, do you wish to talk to us now?"

Q What was his response?

A He did not want to talk to us. He said that his name was James Davis.

Q All right, sir. Did you have an occasion to conduct a second interview with him?

A Yes, I did, the next day.

It is first noted that defense counsel made no objection to the questions asked of Officer Beal. The failure to make a timely objection constitutes a waiver under the circumstances involved herein since the question asked did not deny the defendant a fair trial. *Schneider v. State*, Okl.Cr., 538 P.2d 1088.

To support his contention that the defendant was denied a fair trial defense counsel cites *Buchanan v. State*, Okl.Cr., 523 P.2d 1134. However, the *Buchanan* case is distinguishable for the reason that in *Buchanan* the accused was questioned concerning why she remained silent during the investigation. In the instant case Officer Beal was recalled to rebut the defendant's testimony that he had not burglarized the OTASCO store. Officer Beal related that during the second conversation the defendant advised him of his true name, stated that he was an escapee from Missouri and that he would take the "rap" if no charges were brought against his nephew. It is therefore apparent from the record as a whole that any presumption of prejudice arising out of the defendant's initial post-arrest silence being brought to the attention of the jury was overcome. *Burroughs v. State*, Okl.Cr., 528 P.2d 714. The independent evidence of the defendant's guilt is quite clear. For all of the reasons set out above the defendant's second assignment is without merit.

 The defendant's last assignment urges that the punishment assessed was excessive. Again we disagree. It is true that the jury assessed the maximum punishment under the provisions of 21 O.S. § 1436. However, as stated in *Gardner v. State*, Okl.Cr., 532 P.2d 1200, the question of excessiveness of punishment is determined by study of all the facts and circumstances surrounding the individual case. This Court has no power to modify a sentence unless it can conscientiously say that under all of the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. In the instant case the defendant was found in the possession of the stolen weapons shortly after the burglary, broken glass similar to that found on the floor of the store was embedded in the defendant's shoes and the defendant sought out an officer and agreed to take the "rap." The sentence was appropriate.

From an examination of the entire record it is our opinion that the defendant received a fair and impartial trial by jury. No substantial right of the defendant was prejudiced and the judgment and sentence from should be, and the same is hereby *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.