Dorothy Jean LOVELADY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15847.

Court of Criminal Appeals of Oklahoma.

Dec. 16, 1970.

Appeal from the District Court of Oklahoma County; W. C. Kessler, Judge.

Dorothy Jean Lovelady was convicted of the crime of Forgery in the Second Degree; was sentenced to serve five years in the state penitentiary, and appeals. Reversed and remanded for a new trial.

Mac Oyler, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., William M. Bonnell and Max A. Martin, Asst. Attys. Gen., for defendant in error.

BRETT, Presiding Judge.

Dorothy Jean Lovelady, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County with the crime of Forgery in the Second Degree; she was sentenced to serve five years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The facts briefly stated reveal that on May 9, 1969, the defendant was alleged to have given two checks in payment for "poodle pups"; one check was in the amount of $100.00, and was allegedly given to a Mrs. Ward at approximately 5:00 P. M. Mrs. Ward did not see the defendant sign the check, but she identified the defendant as being the person who gave her the check. On cross examination, Mrs. Ward testified that the Del City Police Officer showed her three pictures some five months after the check was given, and she identified the defendant from the pictures.

Mrs. Ruth Ray testified as a rebuttal witness and stated that on the same date, May 9, 1969, the defendant gave her a check in the amount of $90.00 for a poodle pup. The description of the woman who gave her the check was essentially the same as that given for the woman who gave the check to Mrs. Ward. Some five months after the transaction occurred, the Del City Police showed Mrs. Ray one picture, which she identified as being that of the person who gave her the forged check.

■ This case should be reversed and remanded to the trial court in order that defendant may have a new trial because of a combination of circumstances, coupled with the denial of defendant's motion for a new trial. It is the general rule of this

Court that a case will not be reversed for the failure of the trial court to grant defendant's motion for continuance, unless it can be shown that there was an abuse of discretion by the trial court; however, this Court said in the syllabus to Andrews v. State, 84 Okl.Cr. 104, 179 P.2d 491 [1947]:

"An appellate Court will examine the entire record when considering the overruling of a motion for continuance, to ascertain whether or not defendant has suffered prejudice by reason thereof."

In reaching the decision in the *Andrews case,* the Court also stated that each case depends upon the particular facts of that case.

It is readily observed in this case that defense counsel failed to file the required affidavit provided for in 12 O.S.1961, § 668, but the record reflects that the trial court specifically permitted counsel to enter the oral motion, argue the same, and made no requirement for counsel to subsequently file his affidavit. Counsel set forth in the record that his motion for continuance was premised upon the absence of one witness, Mrs. Mary Horn; and that a subpoena had been issued for her attendance, and that she would be willing to testify if present. Counsel asserted that the absent witness could state that the defendant was present at defendant's home on May 9, 1969, at approximately 5:40 P.M., when the witness' automobile caught on fire in front of the apartment house where defendant lived. When requested to stipulate such, the prosecutor emphatically refused and announced that he would stand on the announcement that the state was ready to go to trial.

The record reflects that the trial was set to commence on Tuesday December 9, 1969; however, three days prior to that date—on the preceding Saturday—the witness departed for Detroit, Michigan to attend the funeral of her brother. Defense counsel asserted that Mrs. Horn would testify when she returned. It must be presumed that defense counsel was not informed of the witness' absence until time

for trial, otherwise he would have had the necessary affidavit prepared, because he is an experienced trial lawyer. It would seem also, that the issuance of the subpoena for Mrs. Horn's presence to testify illustrates counsel's good faith and diligence required by the statute.

There is little doubt in this writer's mind but that the defendant was prejudiced by the court's refusal to grant defendant's motion for continuance. Because of the absent witness it became necessary for the defendant to testify concerning her whereabouts. On direct examination defendant admitted that she had been in trouble in California some time earlier; she also admitted that she was presently on a suspended sentence for another crime. She admitted her guilt on that charge, but denied guilt on the charge for which she was being tried. Defense counsel attempted to get into the record her willingness to undergo a handwriting examination, and a lie detector test, but the state vigorously objected to any reference being made to either.

The state argues that the testimony of the absent witness would only be cumulative, and consequently it was not error to overrule the motion for continuance. However, considering the third proposition in defendant's brief with the complaint concerning the motion, the question of the testimony being "merely cumulative" becomes doubtful.

In the third proposition defendant asserts that the trial court should have acceded to the jury's repeated requests to have certain parts of the testimony read back to them, including the request to have all the testimony read to them. The trial court refused all three requests of the jury foreman.

Title 22 O.S.1961, § 894, provides:

"After the jury have retired for deliberation, *if there be a disagreement between them as to any part of the testimony* or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into

court. Upon their being brought into court, *the information required must be given* in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called." [Emphasis added.]

With reference to the foregoing statute, this writer said in Jones v. State, Okl.Cr., 456 P.2d 610 [1969], that the jury does not have an absolute right to have testimony read to them, after they have commenced their deliberation on a verdict, *in the absence of statute*. A review of the foregoing statute appears to make that provision, but it has been interpreted that the granting of the request falls within the discretion of the trial judge. Notwithstanding the provisions of Jones v. State, *supra*, which clearly states that it is within the discretion of the trial court to comply with the jury's request, these "discretionary decisions" of the trial court are among the factors referred to in Andrews v. State, *supra*, "that each case depends upon the particular facts of that case."

In the instant case, the jury foreman requested that the trial court on two different occasions have certain testimony read back to them, but the court refused each time. When the third request was made, the jury foreman requested that all the testimony be read to them, but that request was also refused. What testimony the jury desired to have read to them is not known at this time, but the fact that several requests were made causes this writer to conclude that there must have been some disagreement between them, as referred to in the statute.

A brief review of what the state's case consisted of reveals that the case in chief included the testimony of Mrs. Ward, who received the forged check upon which this charge was premised; and the testimony of the banker, who identified the bank account of one, Wallace Thrasher—against whose account the check was drawn—and the banker's statement that his records showed that a "Jackie Rene Baker" was not authorized to write checks against the account. After presenting the two witnesses the state rested its case.

The defense offered three witnesses in an effort to establish defendant was in the vicinity of her apartment in the town of Nicoma Park, an area east of Oklahoma City and some distance from the vicinity of Del City, at the time the alleged offense occurred. Two of those witnesses related the fact that the automobile caught on fire in the vicinity of defendant's apartment about 5:40 P.M. on May 9, 1969. Following those witnesses, defendant took the stand in her own behalf. Defendant now asserts the automobile was that of Mrs. Mary Horn—the absent witness—who could have testified that defendant was present at the scene of the fire.

To rebut the testimony of the defendant, the state offered its third witness who was Mrs. Ruth Ray, the second woman who was given a forged check by a woman who met the same description given by Mrs. Ward. At the conclusion of her testimony, the defendant was required to take the witness stand again to deny that charge, after which the defense rested.

At the conclusion of the trial, there seems little doubt but that some members of the jury had certain misgivings concerning defendant's guilt. Hence, who is able to say at this time whether or not the testimony of the absent witness would have been merely cumulative.

Had the witness appeared, and if she had testified with reasonable certainty to convince the jury that the defendant was where she claimed to be, when the automobile caught on fire, the jury might have reached a different result. Rex Ramos, the ambulance driver, placed the defendant at her apartment about 5:00 P.M., and stated that shortly thereafter the automobile fire occurred. What transpired during and after the fire, as it concerns this defendant and to which Mrs. Horn may have had some knowledge, is now conjecture. The question, as to whether or not Mrs. Horn could have stated with certainty that the defendant was where she claimed to be

at the time the checks were given remains unanswered. If Mrs. Horn could have given positive statements that defendant was at her apartment, when the fire occurred, her testimony certainly would not have been cumulative as to defendant's whereabouts, as the state contends. Certainly, it would have been concerning the automobile fire, but not as to defendant's presence at the scene.

Also, we cannot pass lightly the fact that the two witnesses who positively identified the defendant as being the woman who gave them the checks, first observed photographs of the defendant presented by the Del City Police Officer, five months after the acts were committed. The two witnesses then subsequently identified the defendant in the court room. As defendant asserts in the third proposition of her brief, all reference offered in the vein of possible confused identification was objected to by the state. Witness Rex Ramos testified that the wife of Wallace Thrasher possessed a red sport coupe and stated that no one else drove the automobile.[1] When the defense attempted to show the similarity of physical and facial characteristics, which existed between the two women, the state objected. The state blocked defendant's request to take a lie detector test, for whatever value it might have been; and the state also refused to permit her to execute the "London Letter" for writing comparison by the State Bureau of Investigation. Ordinarily the defendant is in the position of objecting to the execution of the London Letter, when the state requests such for the same purpose. But the identification causes this Court the same concern as was shown by the United States Supreme Court in the case of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 [1968]. At page 971 of S.Ct., at page 1253 of L.Ed.2d, the Supreme Court said in the *Simmons case, supra,* the following:

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification."

Therefore, after considering the entire record of this case and the various unique aspects of it, the conclusion reached is that defendant was prejudiced by the absence of the witness; and was entitled to have had her requested continuance.

We are therefore of the opinion this case should be, and the same is therefore, reversed and remanded for a new trial; and the Warden is directed to release defendant forthwith: and Dorothy Jean Lovelady is hereby ordered returned to her former position of being on suspended sentence, pending the results of the new trial.

Reversed and remanded.

NIX, J., concurs.

BUSSEY, J., dissents.

---

1. The forged checks were written on blank checks of Wallace Thrasher, and were signed in the name of Jackie Rene Baker.