Billy Ray BURROUGHS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–248.

Court of Criminal Appeals of Oklahoma.

Nov. 19, 1974.

Charles W. Stubbs of Stubbs & Stiner, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant, Billy Ray Burroughs, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF-73-1716, for the offense of Carrying a Firearm, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1283. His punishment was fixed at a term of three (3) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness, Michael O'Shea, a detective with the Vice Division of the Oklahoma City Police Department, testified that he and his partner, Detective Michael Hoover, had occasion to be at the Coachman Restaurant at approximately 12:35 on the morning of June 25, 1973. He stated that he went inside the restaurant while his partner remained in the detective cruiser. Shortly after being seated in the restaurant, he observed the defendant enter with three other people. As the defendant walked by Detective O'Shea, the detective observed that the defendant was wearing a pistol in a holster on his right side. (Tr. 10) After seeing this, Detective O'Shea got up and walked out to advise his partner of what he had seen. At this time they went back into the restaurant, located the defendant in a booth with the other three people, and walked up to him. Detective O'Shea walked up in front of the defendant, identified himself, showed defendant his credentials, and advised him to keep his hands on the table. Detective Hoover walked up behind the defendant, reached over his right shoulder down to his right side and removed the pistol the defendant was carrying. (Tr. 12) At this time, the defendant was arrested and removed to the police station. The remainder of Detective O'Shea's testimony on direct examination consisted of his identification of State's Exhibit 1 (the pistol), Exhibit 2 (the holster), and Exhibit 3 (five live rounds of .38 caliber ammunition).

On cross-examination, Detective O'Shea testified that the defendant had his left arm in a cast of some kind but could not remember if it was in a sling. He related that he left the restaurant before the defendant and the others actually got to the booth. He stated that he had heard that an older woman owned the restaurant and did not believe that defendant's wife owned it. He testified that he was not aware that the restaurant had been robbed prior to the morning of defendant's arrest. He finally testified that he had not made any investigation of any matter at the Coachman Inn Restaurant prior to June 25, 1973.

The State's next witness, Officer Don Acox, testified that he conducted a follow-up investigation of the defendant about 8:00 o'clock the morning of June 25, 1973. After advising the defendant of his rights, he was told by the defendant that he wished to remain silent. (Tr. 36)

The State's third witness, Dan Gray, Court Clerk, Oklahoma County, testified from the original records of Case No. CRF-70-2525, State versus Billy Ray Burroughs; following which a certified copy of same was introduced into evidence. He testified that there was judgment and sentence entered in the above case on a plea of guilty. It was entered on the 2nd day of November, 1970. The charge was Larceny of an Automobile, and the defendant was represented by counsel. There was no cross-examination of this witness. At this time the State rested its case.

The defendant called Hazel Burroughs as his first witness. She testified that she is the wife of the defendant and the owner of the Coachman Restaurant. On the night in question, she stated that she, her husband, and two friends went to the restaurant, arriving around 11:15, for the purpose of taking some change for the cashier. After entering the restaurant, she stopped at the cashier to give her the change. Upon opening her purse to get the change, she discovered that she also had a pistol with her. She identified

State's Exhibit 1 as the pistol she took to the restaurant. She testified that she bought the pistol after being advised to do so by the police, for the protection of herself and her business. She identified defendant's Exhibit 1 as being the check with which she purchased the pistol from T. G. & Y. on June 16, 1973. Mrs. Burroughs stated that it was she, and not her husband, who took the pistol into the restaurant. After they were all seated in the booth, she took the pistol out of her purse and asked the defendant to take it and put it in the restaurant office. At this point the police officers walked up and arrested the defendant.

On cross-examination, she testified there was no way the defendant could have had the pistol in the parking lot before they entered the restaurant, as it was in her purse.

The defendant's next witness, Leroy McGowan, testified that he was with the defendant, Mrs. Burroughs, and June Whiteman on the night in question. Upon arriving at the restaurant in defendant's automobile, they all went in and were seated at a booth. He testified that he did not see whether the defendant had a pistol as they went into the restaurant and then stated that the defendant did not have a pistol on him. He stated that after they were all seated in the booth, Mrs. Burroughs took the pistol out of her purse and told the defendant, "Look what I've got here." (Tr. 95) At this point, the defendant grabbed the pistol and laid it back down on the table.

On cross-examination, he testified that the pistol was in a holster. He further stated that Mrs. Burroughs' statement upon taking the pistol out of her purse was, "Look what I have done." (Tr. 102) At this point, the defense rested.

Detective Michael O'Shea was recalled as a rebuttal witness. He testified that he did not lose sight of the defendant from the time defendant entered the restaurant until he saw the pistol in a holster on the defendant's belt. He stated that it was approximately five seconds from the time defendant entered, until he saw the pistol. He stated that no one with the defendant stopped at the cashier when they entered.

The State's final rebuttal witness was Detective Michael Hoover, who testified that he was on duty with his partner, Detective O'Shea, on the night in question. While sitting in the detective cruiser, directly in front of the restaurant, he observed the defendant arrive with three other people. He testified that the lighting conditions were excellent, as the parking lot was well lighted and there were lights on the front of the restaurant. As the defendant walked past the cruiser, a gust of wind blew the defendant's jacket open, enabling him to observe that the defendant had a pistol in a holster on his right hip. (Tr. 126) At that point, he called headquarters and advised them that he would be out of the cruiser and the reason why. As he was preparing to get out, his partner walked out of the restaurant, at which time they determined what they were going to do. The remainder of his testimony substantially corroborated that of Detective O'Shea.

Defendant's first assignment of error alleges that there was insufficient evidence to show an identification of this defendant and the defendant in the prior conviction, in order to sustain a conviction. We cannot agree.

In Stanford v. State, Okl.Cr., 363 P.2d 515, it was determined that the conviction from the county where the accused resided, with the same name as that of defendant on file, is strong circumstantial evidence that the person is one and the same. We observe that no contradictory evidence was offered to show defendant was not the same person. This Court held in Williams v. State, Okl.Cr., 364 P.2d 702:

"For purposes of proof of former conviction under the Habitual Criminal Act, identity of name of defendant and person previously convicted is prima facie evidence of identity of person, and in absence of rebutting testimony supports a

finding of such identity, and upon proof of identity of name, question of identity is for jury upon consideration of all surrounding facts and circumstances, including commonness or unusualness of the name, character of the former crime or crimes, and place of its commission. 21 O.S.1971, § 51."

Likewise, there is no proper showing that said judgment and sentence was not a final order. Therefore, defendant's complaint is without merit.

Defendant's second assignment of error asserts that there was misconduct on the part of the attorney for the State of Oklahoma and this created a prejudicial error and denied the defendant a fair and impartial trial. He contends that his Fifth Amendment privilege was violated when the Assistant District Attorney elicited the following testimony from Officer Don Acox regarding his post-arrest interview of defendant. (Tr. 35–37)

"Q. All right. What did you do when he was brought down?

A. Advised him of his rights.

Q. What rights did you advise him of?

A. That he had the right to remain silent; that anything he said could and would be used against him in a court of law; that he had the right to have an attorney present while he's being questioned; that if he could not afford to have—to hire an attorney one would be appointed to represent him by the courts before any questioning.

Q. And did you inquire as to whether he understood those rights?

A. Yes, I did.

Q. What was his response?

A. He stated he wished to remain silent.

MR. GROVE: Okay, I have no further questions.

MR. STUBBS: Your honor, now we move that that officer's testimony be stricken and move for a mistrial.

It's placed pure and simply to be prejudiced, prejudicial.

MR. GROVE: If it please the Court, it's part of this case; shows the follow-up investigation and we think that it will be more important as the trial progresses.

MR. STUBBS: That has no probative value.

THE COURT: Ladies and gentlemen of the jury, the objection will be sustained. You are admonished to disregard the testimony of this officer in its entirety with the exception that there was a follow-up investigation made. Every person, by the very nature of the rights that this officer read to this defendant, that they have a right to remain silent. That is a constitutional right, so you are not to—you completely disregard that. An your motion—with the admonition I have given to the jury, the motion for mistrial will be overruled."

It is beyond question that a person has the right to remain silent when arrested, and when accused of a crime. That silence may not be used against him to establish the commission of a crime. U. S. Constitution, Amend. 5.

We recognize that this was error and do not condone the answer elicited from the police officer and we strongly suggest similar questions be omitted in the future because this type of question treads too closely upon forbidden ground.

There is a presumption that error of this kind is prejudicial, and in reviewing a case it becomes necessary for this Court to give full consideration to the record and determine whether said presumption has been overcome and that prejudice did not result.

Therefore, after a careful examination of the record, it becomes apparent that the presumption of prejudice was effectively surmounted by the trial court's admonition to the jury combined with the over-

whelming evidence of defendant's guilt. Accordingly, we do not find that the error complained of requires modification or reversal in the instant case.

■ The defendant's third assignment of error alleges the trial court denied the defendant the right to present the issues of the case. In particular, he claims he was prohibited from putting on evidence to the effect that he did not have possession of the pistol, that the pistol belonged to his wife, that she had purchased it at the direction of the police for the protection of her business, and that the defendant had a broken arm in a sling at the time of his arrest.

A review of the evidence presented by the defendant reveals that the trial court was extremely patient and allowed wide latitude to defense counsel in presenting his case. It is readily apparent that the allegations of the defendant in this proposition are not borne out by the record. All of the above evidence, and more, was testified to by the defendant's witnesses. Therefore, we find this proposition to be without merit.

■ The defendant's fourth assignment of error alleges that the trial court erred in giving its Instruction No. 4, as there was insufficient evidence to warrant same. The pertinent part of the Instruction complained of is as follows:

"In considering whether the defendant and the person named in the judgment and sentence as shown by State's Exhibit No. 4 are one and the same person, you may consider whether or not the names are identical, the commonness or unusualness of the name, the character of the former crime, the place of the commission of the former crime along with the surrounding facts and circumstances as you find them."

We cannot agree with defendant's contention. In Sessions v. State, Okl.Cr., 494 P.2d 351, this Court said:

"We lastly observe that the instruction should have been more detailed giving the jury guidelines to consider all the surrounding facts and circumstances such as [commonness][1] or unusualness of name, character of the former crime or crimes and the place of its commission."

The above quoted instruction is directly in line with what we observed in Sessions v. State, supra, and further it is in accord with what we held in Williams v. State, supra. Therefore, once it was shown that the identity of name of the defendant was the same as the person previously convicted, the question of identity became one for the jury upon consideration of all the surrounding facts.

■ The defendant further alleges that if the above stated instruction is proper, then there should have been an instruction to the jury, upon circumstantial evidence which was requested and denied. The evidence herein was both direct and circumstantial. It has been repeatedly held that where the State's evidence is not entirely circumstantial, it is not necessary to give an instruction on circumstantial evidence. See Watkins v. State, Okl.Cr., 351 P.2d 317.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

---

1. In my original opinion in Sessions v. State, supra, the word "continence" was erroneously used.