**Charles BROWN, Jr., Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–391.**

Court of Criminal Appeals of Oklahoma.

Dec. 31, 1975.

Robert S. Durbin, Deputy Chief Public Defender, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Charles Brown, Jr., hereinafter referred to as defendant, was charged, tried jointly with one Felix Adams before a jury in a two stage proceeding in the District Court of Tulsa County in Case No. CRF–74–2401, and convicted of the crime of Robbery with Firearms After Former Conviction of a Felony. Punishment was assessed at a term of not less than fifteen (15) nor more than twenty-five (25) years in the custody and control of the Department of Corrections of

the State of Oklahoma. From a judgment and sentence in conformance with said verdict the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Cheryl Fields testified that on the 8th day of October, 1974, at approximately 11:00 p. m. Felix Adams came to the front door of her Tulsa apartment anu asked for her husband. When her husband opened the door, four men with masks on forced their way in at gun point. Mrs. Fields identified one of the assailants as Felix Adams and stated he wasn't wearing a shirt. She further described the gun as being similar to State's Exhibit No. 2. A portable color television set, her husband's watch, and other items were taken. The witness identified State's Exhibit No. 3 as her husband's watch and stated that State's Exhibit No. 1 was a picture of her television set. She was not able to identify any of the other participants. She further stated that her husband was hit about the head and was bleeding.

Michael Fields then testified to essentially the same facts as his wife with the exception that he was unable to identify Felix Adams as being one of the participants. He further stated that he had been threatened with death if he did not cooperate. On the night in question he was at a convenience store when Robert Lee Ballard approached him and asked for a ride home. Ballard lived in the general vicinity of his apartment and they arrived home approximately fifteen minutes prior to the robbery. The witness notified the police shortly thereafter giving them a description of the robbers and the property taken.

Robert Lee Ballard then testified that on the date in question he lived near the Fields' apartment and that he had prior criminal convictions. He further stated that he knew the defendant and Felix Adams and that he had talked to them and to two others earlier on the 8th concerning the robbery of the Fields' residence. On the evening of the 8th he was in a car with the defendant, Adams and the others, when they saw Fields' car at a convenience store. Ballard, not wanting to take part in any robbery, left and went in the store and asked Fields for a ride home. They got home around 10:30 p. m. Later that evening Fields confronted the witness with a pistol and threatened to kill him. The police arrived and Ballard told them of his prior conversations with the defendant, Adams and the others. Ballard was then arrested, placed in the patrol unit and accompanied the police to the defendant's residence.

Maggie Fields, sister of Michael Fields, then testified that late on the evening of the 8th Felix Adams and the defendant came to her apartment and that Adams was without a shirt. Both were "kind of out of breath." All three looked out the windows and when a police car drove by they stepped back from view.

Officer Jack Putnam of the Tulsa Police Department testified that on the evening in question he was assigned to investigate the robbery at the Fields' residence. During his investigation Robert Ballard told the officer that Michael Fields had threatened to harm him if he did not tell who was involved in the robbery. As a result of the conversation with Ballard, Officer Putnam proceeded to Adams' and then the defendant's residence. When he arrived at the defendant's residence he found the defendant coming from the back of the house. He proceeded to the back bedroom and found Adams in the closet behind some clothes. A .38 caliber revolver, State's Exhibit No. 2, was found in the closet with Adams. The wristwatch and television set were also recovered.

Putnam then testified that the defendant and the others found at the residence were advised of their Miranda rights. In response to a question by the prosecutor and over objections by defense counsel, Putnam stated that each individual, after being advised of his rights, stated he did not want

to say anything and wanted an attorney present before questions were asked.

The State then rested, the defendant put on no testimony and rested, and after arguments of counsel the jury returned a verdict of guilty. The State and the defense then stipulated to the defendant's prior conviction of a felony and both parties rested.

The defendant's sole assignment of error urges that the trial court erred in not granting a mistrial when the defendant's Fifth Amendment constitutional right to remain silent was directly used against him. The defendant contends that his privilege to remain silent was violated when the prosecuting attorney elicited the following testimony from Officer Putnam, to-wit:

Q. (MR. HOPPER) I will ask you did you or anyone in your presence advise these men of their constitutional rights to remain silent?

A. Officer Shockley read the rights of the Miranda decision.

Q. And after they were advised of their rights, did any one of them make any statement—

MR. CORLEY: I object to that.

Q. Officer Putnam, tell the jury what you heard Officer Shockley advise these defendants?

A. Officer Shockley read from a card the rights—you want the rights?

Q. Yes.

A. I don't know if I can read them exactly how he—I can read them like he read them,—I can remember what he said. I can read them verbatim.

Q. Do you have a card with you?

A. Yes, sir.

Q. The same type of card Officer Shockley had with him?

A. Yes.

MR. DURBIN: I object to that.

A. I can relate them the best of my memory.

Q. Do you remember what Officer Shockley read?

A. Officer Shockley said you have a right to remain silent, anything you say can be used in a court of law against you. You have a right to an attorney; if you cannot afford an attorney one will be appointed for you; you have the right to stop answering questions at any time.

Q. Did you ask them if they understood those rights?

A. Yes, sir. Each one individually said they understood each one of the rights as they read them.

Q. And after they were advised of these rights did any of the individuals say anything?

MR. CORLEY: I object to that.

THE COURT: Overruled.

A. Each said they didn't want to say anything; they wanted an attorney present before any questions.

THE COURT: Approach the Bench, please.

(Discussion at the Bench out of the hearing of the jury)

MR. CORLEY: Comes now the defendant Felix Adams, and moves the Court for a mistrial on the basis that the State is using the fact they remained silent as evidence of guilt.

MR. DURBIN: Comes now the defendant, Charles Brown, Jr., and accepts the statement of co-counsel, attempt of the State to use the Fifth Amendment against incrimination; that he has a right to remain silent, in violation of the Constitution and not having used it against him as an admission of guilt.

THE COURT: I will reserve my ruling until after recess.

MR. CORLEY: May I have a continuing objection to that.

MR. HOPPER: No further questions.

The record further indicates that during closing argument the prosecuting attorney made the following comments, to-wit:

"—you are aware that the testimony that you heard from the witness stand, the State's witnesses is not contradicted, . . ."

and

"But you see this is all brought up; this is the reason it is brought up to cloud the issue, to try to make you forget the only evidence you heard from that witness stand which has gone in uncontradicted."

In the recent case of *Burroughs v. State,* Okl.Cr., 528 P.2d 714, we stated that it is beyond question that a person has the right to remain silent when arrested and when accused of a crime. That silence may not be used against him in order to establish the commission of a crime. The Court in *Burroughs,* supra, in a case quite similar to the one at hand, recognized that it was error to elicit an answer from a police officer such as the one above. We further held that there is a presumption that error of this kind is prejudicial and that in reviewing a case it becomes necessary for this Court to give full consideration to the record and determine whether said presumption had been overcome and that prejudice did not result therefrom.

After a careful examination of the record it is apparent that the trial court offered to admonish the jury but defense counsel declined as a matter of trial tactics. It is further evident that although the evidence of guilt is not overwhelming, it is strong. The defendant, Felix Adams and others planned a robbery of the Fields' apartment. The defendant, Adams, and the others were together shortly before the robbery. There was uncontradicted testimony that Adams, without a shirt, and three others robbed the apartment. Within a few hours after the robbery the defendant, Adams and others were found at the defendant's residence with a gun similar to the one used in the robbery and items stolen from the Fields' apartment. Maggie Fields also placed the defendant and Adams, without a shirt, together on the late evening of the 8th, out of breath and predisposed to look out the window.

 The defendant urges that the error was magnified when the prosecuting attorney in his closing argument stated that the State's evidence was uncontradicted. However this Court has held that when a defendant fails to offer any evidence the prosecutor is not prevented from discussing the evidence and to state that such evidence is uncontradicted. Such comment does not violate the statute forbidding comment on the fact that defendant did not testify. *Morrow v. State,* Okl.Cr., 508 P.2d 714.

For the reasons set out above we do not find that the error complained of requires modification or reversal. The defendant received a fair and impartial trial before a jury and the judgment and sentence appealed from should be and the same is hereby *affirmed.*

BRETT, P. J., concurs in results.

BUSSEY, J., concurs.