**Luther Ray ENGRAM, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–410.**

Court of Criminal Appeals of Oklahoma.

Feb. 6, 1976.

Mary E. Bane, and Robert J. Unruh, Jr., Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Frank Muret, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge.

Appellant, Luther Ray Engram, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Logan County, Oklahoma, Case No. CRF–73–34, for the offense of Lewd Molestation, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1123. His punishment was fixed at a term of twenty (20) years' imprisonment, from which no regular appeal was taken. Thereafter, on the 14th of January, 1975, the defendant filed an application for post conviction relief in the District Court, Logan County, whereafter on the 11th day of April, 1975, said application was denied. A subsequent appeal from the denial was taken to this Court and on 'the 29th day of May, 1975, this Court entered an order remanding the denial of post conviction relief for an evidentiary hearing. On the 6th day of June, 1975, a hearing was held and the original judgment and sentence in the case was withdrawn, whereafter on the 16th day of June, 1975, judgment and sentence was reimposed. From the reimposi-

tion of the judgment and sentence the defendant has perfected a timely appeal to this Court.[1]

The State's first witness at trial, as shown by the trial transcript, was James Hopewell who testified that on the 14th day of July, 1973, at approximately 7:00 p. m. he and his wife were driving near Lake Guthrie at which time he had occasion to observe a small girl, later identified as the prosecutrix, Robin Mitchell, who appeared to be bending over pulling stickers from her feet. His wife remarked to him that she thought she had seen a man sneaking up behind the little girl and, as a result of these observations, he and his wife drove across the Lake Guthrie dam and returned to the area where they had observed the small girl. Upon arrival at the area, he obtained a wrench from a tool box from inside his pickup and approached the area where he had first observed the girl. Upon approaching he observed a black male jump from the weeds and run toward the woods. He gave chase for a short distance and then returned to where the child lay beside the road. He picked her up and carried her to the fence where his wife was standing. Thereafter, the child told them where she lived and they took her to her home. While en route to the girl's house a car passed and he asked the driver to call the police. Upon arrival at the house they called the police who drove up a few minutes later. The witness stated that he accompanied them, along with the girl, the girl's mother and his wife, to the area where the incident had occurred. There, the officers arrested the defendant, who he identified in court.

Janet Hopewell, wife of James Hopewell, testified to essentially the same facts as had her husband. She testified that she had seen a man sneak up behind the little girl as she had been bending over and reach through the fence toward her. She further testified that after she and her

husband turned around and returned to the area where they had first observed the little girl, she observed a man wearing bright blue coveralls lying on the ground. She then saw the girl's foot kick. The witness' husband then obtained a wrench from his toolbox and walked over to the area and at the time she saw the man run away. She stated that she saw the man's face and later identified this person in court as the defendant.

Robin Mitchell, the prosecutrix, testified that she was nine years of age and that on the 14th day of July, 1973, she had gone to Lake Guthrie to fish with her brother. She further testified that while fishing her line became entangled in some moss and that a man who said his name was Raymond, and whom she identified in court as the defendant, aided her in untangling it. She stated that the defendant told her to go up in the bushes where he could help untangle the fishing line, in an area where there were "tall weeds." She further testified that the defendant unzipped her jean shorts, pulled her pants down, and then placed his hand over her mouth and laid on top of her. She stated that the next thing she remembered was Mrs. Hopewell approaching and then carrying her to her house.

Jane Mitchell testified that Robin Mitchell was her daughter and that at approximately 7:00 p.m. on the 14th day of July, 1973, Mrs. Hopewell arrived at her house carrying her daughter.

Bill Warner testified that he was a police officer with the Guthrie Police Department and was so employed on the 14th day of July, 1973, when, at approximately 7:00 p. m., he received a call to proceed to Lake Guthrie. He testified that upon arrival at the area, he arrested the defendant. He further testified regarding the distances between the spot where the Hopewells testified they had seen the child and the point at which the defendant was apprehended at

1. This Court now reviews the trial record upon which the judgment and sentence was

originally imposed as though this were an original appeal.

Lake Guthrie. He stated that the distance between the two points was approximately six-tenths of a mile and that the drive took approximately two minutes. He stated that the defendant, when arrested, wore blue coveralls, but that to his knowledge the defendant was not wearing a fishing apron.

Cliff Endicott testified that he was the Sheriff of Logan County and was so employed on the 14th of July, 1973, when he responded to a dispatch to proceed to Lake Guthrie. He stated that upon arrival in the area, he observed two Guthrie Police Officers escorting the defendant to jail. He further testified that on the following Monday while the defendant was in custody and after defendant had been informed of his constitutional rights, defendant refused to respond to interrogation without the presence of an attorney. Thereafter the State rested.

Frank Garrett testified that on the 14th day of July, 1973, he was at Lake Guthrie with the defendant, other family members and friends. He stated that the defendant was present with him until the officers arrived and arrested him. He further stated that the defendant did untangle a line for the prosecutirix but did not leave the lake area. He also testified that he too had on a blue coverall suit like the defendant's, but that the defendant was also wearing an apron with pockets in which he kept his fishing gear. He said that the defendant had not been out of his sight the entire time. On cross-examination he stated that he was also the defendant's father-in-law.

Wanda Engram testified that she was the wife of the defendant and that she was fishing with the defendant on July 14, 1973. She further testified that her family, friends and the defendant were all fishing together in one location, and the defendant never left her presence. She said that during the time they were fishing a small girl and boy joined them. She testified the girl's reel hung in the water and the defendant aided her in untangling it. She said that the child left and approximately

15 minutes later the police arrived and arrested the defendant. She further stated that the defendant, on that day, was clad in a blue union suit and a white carpenter-type apron.

Marie Garrett testified that she was the wife of Frank Garrett and the mother-in-law of the defendant. She stated that she was also a member of the fishing party and was present when the defendant was arrested. She testified that the defendant never left her presence and that at one time two small children, the girl and a boy, joined the group but later left. She said the defendant did not leave at any time with the children and that she further related this to the police at the time the defendant was arrested.

The defendant then took the stand to testify in his own behalf and stated that he had been fishing at Lake Guthrie with his family and some friends on the 14th of July, 1973. He testified that he remained with the group fishing and never left their presence, as testified to by prior witnesses. He said that at no time did he leave the lake bank or go into the area by the road or into the woods. He stated that he never had contact with the child, but did aid the prosecutrix in untangling her fishing line. On cross-examination he testified that he had a former conviction for indecent exposure, for which he had served one year in the county jail.

Thereafter the defense rested.

The defendant's first assignment of error asserts that "The State did not meet its burden of proving a former conviction, because the proof submitted does not affirmatively show that the defendant was represented by counsel at the rendering of the judgment and sentence on the former conviction, or that he completely waived counsel, nor does the record affirmatively show the presence of the defendant himself at the judgment and sentence."

 We first consider the latter proposition of this assignment of error which asserts that the record does not affirmatively show the presence of the defendant

at judgment and sentence. We note that State's Exhibit No. 1 is a certified copy of the judgment and sentence rendered against defendant upon his plea of guilty for the offense of indecent exposure. We further note that upon the face of the certified copy of the judgment and sentence the following is reflected: ". . . Comes now the State by its attorney, and comes also the defendant in person and said defendant being now present in open Court . . ." State's Exhibit No. 1 was introduced into evidence during the second stage of the proceeding without objection by the defendant and, thus, it is competent evidence to prove the defendant's presence at the time of imposition of judgment and sentence. For this reason we find this proposition of the defendant's first assignment of error to be without merit.

We now consider the defendant's contention that the judgment and sentence introduced into evidence by the State fails to reflect that defendant was represented by counsel at the judgment and sentence or that he waived counsel. Defendant maintains that the former conviction introduced is, therefore, inadmissible, citing *Tucker v. State*, Okl.Cr., 499 P.2d 458 (1972).

 The United States Supreme Court in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R. 2d 733 (1963), established the unequivocal rule making it unconstitutional to try a person for a felony in a state court unless he has a lawyer or has validly waived one. See, *Burgett v. Texas*, 389 U.S. 109, 114, 88 S.Ct. 258, 19 L.Ed.2d 319, 324 (1967). The *Gideon* rule was not limited to prospective application. See, *Doughty v. Maxwell*, 376 U.S. 202, 84 S.Ct. 702, 11 L. Ed.2d 650 (1964) and *Pickelsimer v. Wainwright*, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963). Furthermore, to permit a conviction obtained in violation of *Gideon v. Wainwright*, supra, to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case. *Burgett v. Texas*, supra. Furthermore presuming repre-

sentation by counsel or waiver thereof from a silent record is impermissible. See, *Carnley v. Cochran*, 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962). Also see, *Tucker v. State*, supra.

As this Court stated in *Scobie v. Page*, Okl.Cr., 481 P.2d 781 (1971), and cited with approval in *Chester v. State*, Okl.Cr., 485 P.2d 1065 (1971):

" 'The test is whether or not competent evidence shows the defendant had counsel, not merely whether such representation is reflected upon the face of the judgment and sentence instrument.' "

In *Scobie,* supra, the State proved the defendant was represented by counsel by utilization of the appearance docket which was uncontested as to accuracy and such was held to be competent evidence.

 In the instant case the judgment and sentence of the defendant's prior conviction in the District Court, Muskogee County, Case No. 11023, for the offense of indecent exposure, fails to disclose that the defendant was represented by counsel nor waived counsel. However, the appearance docket introduced as State's Exhibit No. 2, without objection by the defendant, reflects that the defendant was represented by Jesse Leeds at initial appearance on September 15, 1965, and that on the 16th of September, 1965, Jesse Leeds and Dean Starts were appointed as attorneys for him as defendant had no funds. The appearance docket further reflects that the defense counsel filed various motions whereafter on the 13th day of October, 1965, defendant appeared by the attorney of record, Jesse Leeds, and withdrew his plea of not guilty and entered a plea of guilty, whereafter sentencing was passed to the 15th day of October, 1965. The appearance docket also reflects that the defendant was apparantly sentenced on the 15th day of October, 1965, but a minute was not made. A minute apparently was later made noting the sentence imposed and that Leeds and Starts were to receive $50.00 instead of $25.00 previously ordered, apparently on the 13th day of October, 1965.

We find no minute that either attorney of record for the defendant withdrew. The defendant offered no evidence during the second stage of the proceedings to refute the validity of the appearance docket which shows defendant was represented by counsel on his prior conviction. The defendant, on appeal, still offers no evidence to refute the validity of the appearance docket, nor does the defendant allege his plea of guilty in the prior conviction was not intelligently nor voluntarily entered. On balance, we are of the opinion there is, on the one hand, credible evidence indicating the defendant did have counsel on his prior conviction, and, on the other hand no probative evidence that he did not have. We are of the opinion the record is neither silent nor ambiguous. See, *Carnley v. Cochran,* supra, and *Oswald v. Crouse,* 420 F.2d 373 (10 Cir. 1969). After a review of the documentary and testimonial evidence, we are of the opinion that defendant's prior conviction was properly admitted to enhance punishment as provided in 21 O.S.1971, § 51. For this reason we find the defendant's first assignment of error to be without merit.

 Defendant's second assignment of error asserts that instructions "A" and "E" in the second stage of the trial were erroneous and prejudicial to defendant. Defendant asserts that the instructions fail to include an instruction to the jury that a necessary element of proving a former conviction is the presence of counsel or waiver thereof. The absence of such an instruction, the defendant contends, is fatal to the instructions to the jury in the second stage of the proceedings. The State urges, and we agree, that this Court has previously held, in *Greathouse v. State,* Okl.Cr., 503 P.2d 239 (1972), that whether or not defendant's former convictions are constitutionally valid, as contemplated by *Gideon v. Wainwright,* supra, and *Burgett v. Texas,* supra, is a question of law for the court and not a question of fact for the jury. For this reason we find that the instruction given in the instant case was sufficient. We note the general rule is that where the trial court's instructions submitted to the jury, considered as a whole, fairly and correctly state the applicable law such instructions are sufficient. See, *Turman v. State,* Okl.Cr., 522 P.2d 247 (1974). Furthermore, this Court has held that where a defendant is dissatisfied with the trial court's instructions he must submit written requested instructions to preserve his objection, otherwise this Court will not reverse a case if the instructions fairly and correctly state the applicable law. See, *Schapansky v. State,* Okl.Cr., 478 P.2d 912 (1971). We find no written requested instructions by the defendant in the record and we find the instructions given were sufficient. Therefore, we reject defendant's second assignment of error.

Defendant's third assignment of error asserts that Officer Endicott's testimony regarding the defendant's pre-trial silence constitutes reversible error.[2] Defendant

---

2. At the trial during the State's case in chief, the prosecutor called Officer Endicott to the stand at which time the following testimony was presented:
"A. We brought him in and the jailer booked him in.
"Q. O.K. And while he was in your custody in the jail, did you have occasion to talk with him?
"A. Not that evening.
"Q. Did you talk to him at any time while he was in your custody?
"A. On the following Monday we talked to him, you and I talked to him in my office.

"Q. At that time did you advise him of his constitutional rights?
"A. Advised him of the rights, read the rights to him off the card.
"Q. Do you have that card with you today?
"A. Yes, I do.
"Q. Would you read from that card in the same manner as you read to him on that occasion?
"A. O.K. This card is the Miranda warning card. (1) You have the right to remain silent. (2) Anything you say can and will be used against you in a court of law.

maintains that this testimony violates the principle enunciated by this Court in *Burroughs v. State,* Okl.Cr., 528 P.2d 714 (1974), wherein it was held that a person has a right to remain silent when arrested, and the exercising of that right cannot be used against him to establish commission of a crime, citing the United States Constitution, Fifth Amendment. Also see, *Buchanan v. State,* Okl.Cr., 523 P.2d 1134 (1974) and *Miles v. State,* Okl.Cr., 525 P.2d 1249 (1974). This Court in *Burroughs,* the progeny of *Buchanan,* supra, also recognized that to elicit testimony from a police officer regarding a defendant's pretrial silence, such as in the instant case, was error and a presumption of prejudice arises. However, this Court stated that "[I]n reviewing a case it becomes necessary for this Court to give full consideration to the record and determine whether said presumption has been overcome and that prejudice did not result." (528 P.2d at 717) Also see, *Brown v. State,* Okl.Cr., 544 P.2d 555, 47 O.B.A.J. 24, F–75–391 (1975). We further note that the error in *Burroughs,* supra, was found to be harmless as the presumption of prejudice was "effectively surmounted by the trial court's admonition to the jury combined with the overwhelming evidence of defendant's guilt." (528 P.2d at 717, 718) Also in the *Brown* case, supra, the Court extended the applicability of the harmless error doctrine to evidence similar to that complained of in the instant case, even when the evidence was not overwhelming, but where an admonishment was offered by the trial court but declined by the defense counsel.

■ After careful examination of the record, we find that the error, if any, in permitting Officer Endicott to testify as to the defendant's silence at the time of his arrest was cured by failure to object and request admonition by the court, and by defendant's own testimony in his own defense that he chose to remain silent before having an attorney present.[3]

We are therefore strongly persuaded that defendant's own testimony at trial cured the error he now asserts on review and for this reason we find defendant's third assignment of error to be without merit.

■ Defendant's final assignment of error asserts the trial court erred in refusing the jury's request to have parts of the record read to them to clarify time elements in the case. The general rule, as cited by

(3) You have the right to talk to a lawyer and have him present with you when you are being questioned. (4) If you can not afford to hire a lawyer one will be appointed to represent you before any questioning if you wish one. (5) Do you understand each of these rights as I have explained to you? 6) Having these rights in mind, do you wish to talk to us?
"Q. O.K. Now in relation to question number 5 about understanding the rights, did you ask him that question at that time?
"A. I did.
"Q. What was his answer to the question?
"A. He said he didn't want to talk to us without his attorney.
"Q. Did he say anything else at that time?
"A. Yes, at that time we asked him how old he was.
"Q. And what did he say?
"A. Said he was 25 years old.
"Q. Did he say anything else that day?
"A. No, sir.

"BY MR. WHEELER: No further questions, Your Honor." (Tr. 75–76)

3. Defendant took the stand to testify in his own behalf and in the defense's case in chief testified as follows:
"Q. (BY MR. SAMARA) Where'd they take you to after they took you in the police car?
"A. Well, they brought me here, downstairs to the jail house.
"Q. Then what happened?
"A. And they undid the handcuffs on me.
"Q. Did they talk to you?
"A. Well, he asked me did I want to tell him anything and I told him I didn't want to say anything without a lawyer present, you know, and he said, no, I asked him, I said, 'Well, what's the charge?' and he said, 'Assault', you know, just like that, he said, 'Assault is all we know right now.' He asked me my name and my age, you know, and of course, I gave my name and my age." (Tr. 104–105)

defendant, is that the decision of whether or not to allow testimony to be read to the jury after the case is submitted to them is within the judge's discretion, *Jones v. State,* Okl.Cr., 456 P.2d 610 (1969), but that such discretion is subject to review. See, *Fosberry v. State,* Okl.Cr., 509 P.2d 911 (1973) and *Lovelady v. State,* Okl.Cr., 478 P.2d 983 (1970).

 The record reflects that after the jury had retired to deliberate the court received a communication from the foreman, Raymond Young, that the jury wanted to hear the testimony of Mrs. Mitchell regarding the time element involved. The record further reflects that the trial judge in open court explained to the foreman that the court reporter was a novice and being trained and that it would take time to locate in the reporter's notes the various testimony requested, but that such would be done while the court recessed for the evening and returned in the morning. Thereafter the foreman made an appeal to the court for ten more minutes to deliberate that evening, but the court again explained to the foreman that the jury's request for the testimony of Mrs. Mitchell would be granted in the morning if that was what the jury wanted. The foreman again requested ten minutes, which the court granted. Thereafter the jury again retired for deliberation and subsequently returned a verdict. At no time was any objection made to the above mentioned procedure. We again point out that the trial court had the discretion to allow, or not to allow, the reading of testimony to the jury. The record conclusively establishes that the trial court gave this opportunity to the jury and that this opportunity was declined by the jury. For this reason we do not find the trial court abused its discretion and as such we reject the defendant's fourth assignment of error.

For all of the above and foregoing reasons, the judgment and sentence as appealed from should be, and the same is, hereby, *Affirmed.*

BRETT, P. J., concurs in part and dissents in part.

BUSSEY, J., concurs.

BRETT, Presiding Judge (concurs in part, and dissents in part).

I concur that the evidence is sufficient to affirm this conviction, but I am not convinced that the State properly proved the after former conviction; and therefore, I would modify this conviction to ten (10) years imprisonment.