Jessie Cornelius HARDY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-76-876.

Court of Criminal Appeals of Oklahoma.

April 11, 1977.

William J. Hornbostel, Bullock & Hornbostel, Stillwater, for appellant.

Larry Derryberry, Atty. Gen., Michael P. Kane, Asst. Atty. Gen., for appellee.

BRETT, Judge:

Appellant, Jessie Cornelius Hardy, hereinafter referred to as defendant, was charged in the District Court, Payne County, Case No. CRF–76–63, with the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435 and § 51. The case was tried to a jury, and a guilty verdict was rendered. Punishment was assessed at ten (10) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

Mrs. Jean McCubbin stated that she lived at 2103 Tanglewood Circle in Stillwater, and that on March 1, 1976, at about 9:45 a. m. she was cleaning the upstairs portion of her house when she heard a knock on the front door. Being busy she ignored it. About five minutes later she came downstairs and noticed a four door black Oldsmobile automobile, which she did not recognize, parked in her driveway. She then noticed a black male peering in the windows. At this point she called her husband and asked him to come home. After this she noticed the black Oldsmobile back out of her driveway. Two black males were sitting in it. The car backed out into the street and remained there for several minutes, then the car turned around and backed into her driveway. Mrs. McCubbin then exited her house and fled to a neighbor's home. She was unable to identify the defendant as being one of the black males who came to her home.

Mr. Glenn McCubbin, husband of the previous witness, stated that on the day in question he received a telephone call from his wife notifying him of the occurrences. He immediately proceeded to his home where he noticed a black four door Oldsmobile in his driveway. The witness boxed the Oldsmobile in with his own car and then proceeded to the front door. Through the glass he saw in his house a large black male with a goatee carrying a television. The man put down the television and fled. The witness entered his house and obtained an unloaded rifle, at which time he heard the sound of an automobile. The witness went back outside and saw the four door black, late 1960 model Oldsmobile moving away. The witness threw his gun at the car as it was driven away but the witness obtained the tag number, 1976 Oklahoma number OA–3174. The witness called the police. McCubbin noticed that the lock of the rear door had been damaged. He was unable to identify the defendant.

Stillwater Police Officer Kirk Middlestet was summoned to 2103 Tanglewood. The police dispatcher advised him of the description of the car and its occupant. While en route to the McCubbin residence and in close proximity thereto, Officer Middlestet observed a black male walking in the roadway. Middlestet went to the scene, spoke with McCubbin, and then attempted to locate the man whom he had seen on foot. At about that time Bob Kerns, a citizen, told the witness that he had transported a black male into town only minutes before. While searching for this man in town, the witness received a radio call from Officer Waren that a black vehicle had been sighted. The witness proceeded to the area where the black vehicle had been spotted, and assisted in the stop. Defendant, the driver of that vehicle, was arrested. The officer described the car as being a late 1960 model four door Oldsmobile with tag number 1976 Oklahoma OA–3174. The wit-

ness stated that approximately 25 minutes had lapsed between the time he first received the call concerning the burglary and the arrest of defendant.

Stillwater Police Sergeant Charles Waren stated that on the morning of March 1 he heard by radio of the events in question. While en route to the scene he further learned of the sighting by Officer Middlestet of a black male walking in the vicinity of the burglary. The witness parked his cruiser near where Middlestet had last seen the person on foot, and conducted a search of a field, which revealed nothing. Upon returning to his patrol car, a citizen asked him what was going on. The witness described the black Oldsmobile to this citizen and the citizen informed Sergeant Waren that he had seen this car only moments before. The witness informed other officers of this information by walkie-talkie and gave pursuit of the suspect automobile in the citizen's car, eventually helping other officers bring the suspect vehicle to a halt. After the defendant was arrested his car was impounded and an inventory conducted. The witness identified a pair of cotton gloves and a screwdriver as items seized from that car.

Roger Bastion, Detective with the Stillwater Police Department, testified as to the inventory of defendant's automobile and as to the chain of custody of the items seized during that inventory. He also stated that he attempted to take fingerprints from the crime scene but was unable to find any, although he noted what appeared to be the woven pattern of glove prints. He also noted pry marks on a rear door. Lastly, the witness stated that at police headquarters defendant admitted ownership of the black Oldsmobile after being again given *Miranda* warnings. On cross-examination it was revealed that several days after the burglary, the witness showed Mrs. McCubbin six photographs, including one of defendant, and that Mrs. McCubbin chose three as possibly being the perpetrators of the burglary; but, defendant was not one of those chosen. The State then rested.

The defense rested without presenting any evidence.

■ In his first assignment of error, defendant contends that his arrest was illegal and that therefore evidence obtained pursuant to the inventory of defendant's car should have been suppressed. Whether or not defendant's arrest was legal depends entirely upon what information was known to the officers at the time they effectuated the arrest; that is, whether or not the officers had "probable cause" to believe that defendant had committed a felony. *Battles v. State*, Okl.Cr., 459 P.2d 623 (1969).

■ As noted in the factual recitation, the officers had received reliable information that two black males had committed a burglary, and that one of them had fled in a black late 1960 model four door Oldsmobile, bearing 1976 Oklahoma tag number OA–3174. A citizen told Officer Waren that he had seen such an automobile, whereupon Waren gave chase notifying other officers by radio. The black vehicle, driven by defendant, was first seen a short distance from the crime scene and brought to a halt only 25 minutes after the commission of the burglary. Officer Middlestet testified that as he pursued the black Oldsmobile he noted that the tag on it bore the same number as the suspect vehicle. We are of the opinion that these facts gave the officers probable cause to arrest the defendant for the burglary of the McCubbin residence. In *McKay v. State*, Okl.Cr., 472 P.2d 445 (1970), this Court stated:

> "[T]he arresting officer had probable cause, based upon reliable information received from the police dispatcher that a burglary had been committed, said broadcast describing the automobile in which they left the burglary scene, together with the tag number of said automobile and the arrest was made within minutes after this information was received by the police and dispatched to the arresting officer."

Except for the fact that the arresting officers in the present case did not receive

all of their information through a police dispatcher, the information relied on for probable cause to arrest in *McKay* was essentially identical to that relied on in the present case. There being probable cause to arrest defendant, then the inventory of his car while impounded was legal as well. See, *Fruit v. State*, Okl.Cr., 528 P.2d 331 (1974), and *State v. Shorney*, Okl.Cr., 524 P.2d 69 (1974). It was therefore not error to refuse to suppress the screwdriver and gloves, seized during said inventory, and defendant's first assignment of error is without merit.

■ In his second assignment of error defendant contends that the trial court committed reversible error in failing to sustain defendant's motion for mistrial after the prosecutor improperly elicited testimony from a witness concerning defendant's pretrial silence. The testimony complained of came during the direct examination of Officer Waren, one of the arresting officers. The officer was asked if he gave the defendant *Miranda* warnings, and what the substance of that warning was. The following question was then asked:

"Q. All right. Now, did the defendant at the time you read this card to him acknowledge as to whether or not he understood what you'd read to him?

"A. He made no gesture, no statement, nothing at that time.

"Q. No response?

"BY MR. HORNBOSTEL: Objection; move it be stricken.

"BY THE COURT: Sustained.

"(Following proceedings at Bench outside hearing of Jury:)

"BY MR. HORNBOSTEL: Comes now the defendant, and moves this Court for a mistrial on the grounds that the prosecutor has deliberately elicited this question. It was directly elicited by the prosecutor and violates his Fifth Amendment rights, also.

"BY MR. HEADRICK: All I asked is whether or not he acknowledged that he understood his rights.

"BY THE COURT: Motion for mistrial is overruled. I don't think he got that far.

"BY MR. HEADRICK: All I am doing is showing that he was advised of his rights." (Tr. 62–63)

Defendant contends that this was error, relying on *Burroughs v. State*, Okl.Cr., 528 P.2d 714 (1974), wherein this Court held that it was error for the State to present testimony showing that after a defendant had been advised of his rights, he said nothing.

It is obvious from the quoted testimony that the witness was not asked whether or not defendant said anything, but rather was asked if the defendant acknowledged understanding those rights. Whether or not defendant understood those rights would be important if the State was attempting to introduce a statement made by the defendant after his arrest. During the testimony of the State's final witness, Officer Bastion, the State again proved that defendant had been given his *Miranda* rights. After this proof was made the State showed that the defendant waived his right to remain silent and admitted ownership of the car which he was driving when arrested. Defendant made no objections to the introduction of this testimony.

We are of the opinion that it was not error for the trial court to refuse to grant defendant's motion for mistrial. This is so because proof that the defendant had been advised of his rights when first arrested, and that he understood the same, was proper to show the voluntariness of the statement which defendant eventually made. The fact that defendant admitted ownership of the car was extremely relevant to the State's case, since the only thing which connected defendant to the burglary was the description of the car which had been given to the police. The State was not bound to anticipate that defendant would make no objections to the introduction of testimony proving that defendant admitted ownership of the car. The State was aware that it would attempt to introduce such admissions, and voluntariness always being an issue as to such admissions, it was alto-

gether proper for the State to show that defendant was advised of his rights repeatedly and that he understood the same.

In his final assignment of error defendant urges that the evidence tending to connect defendant with this crime, which was all circumstantial, was insufficient to support his conviction for second degree burglary. There is no doubt that the State proved the commission of the burglary. There were signs of forced entry, and Mr. McCubbin saw someone in his home carrying a television set. The State further proved that Mr. and Mrs. McCubbin both saw two black males in their home. Mr. McCubbin saw one black man fleeing in a late 1960 model four door black Oldsmobile, 1976 Oklahoma tag number OA–3174. Another black man was seen walking near the McCubbin home by an officer rushing to the scene. It was shown that this man on foot was given a ride into town, where he asked for directions to the bus station. Defendant was arrested 25 minutes after the commission of the crime, while driving a late 1960's model four door Oldsmobile with license number OA–3174. The car contained brown cotton gloves and a screwdriver. Defendant admitted ownership of the car, and when he was booked into jail gave a Tulsa address.

As we have often stated, this Court will not reverse a conviction which was based upon legally sufficient evidence. Further, when the evidence relied upon by the State for a conviction is circumstantial, legally sufficient evidence means that the facts proven need not be such as to exclude every .hypothesis or negate any possibility other than guilt, *Luker v. State*, Okl.Cr., 552 P.2d 715 (1976); but they must be such as to exclude every *reasonable* hypothesis or conclusion, except that of guilt. *Gary v. State*, Okl.Cr., 561 P.2d 83 (1977); and, *Brown v. State*, Okl.Cr., 481 P.2d 475 (1971). We are of the opinion that the evidence proven by the State and summarized above was sufficient to meet this burden. Defendant's final assignment of error is therefore without merit.

For the foregoing reasons judgment and sentence is *AFFIRMED*.

BUSSEY, P. J., and BLISS, J., concur.